## Commonwealth *vs.* Jorge Gonzalez.

Suffolk. May 7, 2002. - July 1, 2002.

Present: Marshall, C.J., Greaney, Ireland, Spina, Cowin, & Sosman, JJ.

*Practice, Criminal,* Interlocutory appeal, Discovery, Required finding, Double jeopardy. *Constitutional Law,* Double jeopardy.

In a criminal action, the judge's order excluding the Commonwealth's evidence was an inappropriate sanction for the Commonwealth's alleged failure to provide discovery to the defendant in keeping with a pretrial conference report, where, notwithstanding the lack of discovery, the defendant reported that he was ready for trial and never sought a continuance or demonstrated any prejudice to his case, and where there was no indication that the Commonwealth had acted in bad faith; because the judge's action in immediately calling the case to trial after imposing the sanction unjustly deprived the Commonwealth of its right to pursue an interlocutory appeal pursuant to Mass. R. Crim. P. 15 (a) (2) and (b) (1), as appearing in 422 Mass. 1501 (1996), the Commonwealth was entitled to relief under G. L. c. 211, § 3. [279-281]

A criminal defendant was not placed in jeopardy at a proceeding in which the judge erroneously excluded the Commonwealth's evidence, deprived the Commonwealth of an opportunity for appellate review, and then heard from one defense witness whose testimony had no bearing on the defendant's guilt or innocence; therefore, this court vacated the entry of a required finding of not guilty and ordered that the case stand on the existing complaint for further proceedings. [281-285]

PETITION filed in the Supreme Judicial Court for the county of Suffolk on August 11, 2000.

The case was reported by *Cordy,* J.

*Joseph M. Ditkoff,* Assistant District Attorney (*Dianna G. Goldenson* with him) for the Commonwealth.

*James G. Pepe, Jr.,* for the defendant.

GREANEY, J. The defendant was charged on a complaint in the Boston Municipal Court Department with distribution of a class A controlled substance (heroin), G. L. c. 94C, § 32, and distribution of the substance within 1,000 feet of a school, G. L. c. 94C, § 32J. On the day scheduled for trial, a judge in the

Boston Municipal Court: (a) excluded the Commonwealth's evidence concerning school zone measurements and drug analysis of the substances seized; and (b) conducted a brief jury-waived proceeding over the Commonwealth's objection, after which the judge entered a required finding of not guilty on the complaint. The Commonwealth appropriately sought relief from these determinations pursuant to G. L. c. 211, § 3. See *Commonwealth* v. *Lowder*, 432 Mass. 92, 93-94 (2000); *Commonwealth* v. *Super*, 431 Mass. 492, 495 n.5 (2000); *Commonwealth* v. *Gordon*, 410 Mass. 498, 499 (1991). A single justice of this court denied relief from the exclusion order, and then reserved and reported the case on three issues relating to the proceeding that resulted in the required finding of not guilty, including whether the defendant was placed in jeopardy. The Commonwealth appealed from the denial of the portion of its petition under G. L. c. 211, § 3, seeking relief from the exclusion order. We vacate the exclusion order and the required finding of not guilty. A judgment will enter in the county court on the Commonwealth's petition which embodies this relief and places the complaint before the Boston Municipal Court for further proceedings.

The background of the case is as follows. A pretrial conference was held on the complaint on May 1, 2000, and, as far as matters here, it was agreed, in a pretrial conference report, that the Commonwealth would provide the defendant's trial counsel[1] with "drug analysis" and "measurements; [identification] materials; [and] drug cert[ificates]." The compliance date on the pretrial conference report was listed as "5/22/00," after which was written "unagreed." Because the defendant was on probation at the time of his arrest, a probation surrender hearing was scheduled for June 8, 2000, with a trial on the merits of the complaint to proceed thereafter.

Before the probation surrender hearing commenced, counsel for both the Commonwealth and the defendant reported "ready for trial." During the probation surrender hearing, the Commonwealth offered police testimony concerning the events forming the basis for the defendant's arrest and drug certificates analyzing the substances seized at the scene of the alleged drug

---

[1] The defendant is represented by new counsel in the present proceedings.

transaction. The judge found no probation violation, noting "three different stories coming from three different [police] officers;" one officer's distance from the defendant at the time of the alleged drug transaction; and a lack of testimony "that would connect [the drugs seized] to [the defendant]."

Thereafter, the judge spoke with counsel. Defense counsel informed the judge that the defendant would waive his right to a jury trial. The Commonwealth informed the judge that a different prosecutor would be trying the case.

That afternoon, the parties arrived for trial. The defendant's trial counsel filed a motion in limine seeking to exclude all evidence concerning the school zone measurements and drug analysis because this evidence had not been disclosed by the prosecution on or before May 22, 2000. The defendant claimed he would be prejudiced by the evidence because it deprived him of the opportunity to conduct an "independent investigation."

The prosecutor pointed out that the compliance date of May 22, 2000, had not been agreed on, but acknowledged that the Commonwealth was obligated to provide defense counsel with the requested evidence. The prosecutor stated that the requested evidence was available and offered to turn it over to defense counsel immediately. The judge allowed the motion in limine, rejecting the prosecutor's offer as not "good enough," and explained: "You can't have a situation on the day of trial, [where] discovery hasn't been turned over, especially this crucial, crucial type of discovery which goes to the heart of the school zone charge which is enhancing of a significant nature [if] this defendant's found guilty of the underlying charge . . . ." The judge added: "I've told your office, not you specifically, but your office time and time again and over and over until I'm talking like I'm hoarse that discovery in these matters is crucial. Discovery in every criminal case is crucial and [is] to be turned over in a timely manner."

The judge then asked the prosecutor if she was ready for trial. The prosecutor stated that, in light of the excluded evidence, the Commonwealth was not ready for trial. The judge stated that the case was going forward. He asked defense counsel whether the trial would be a jury trial. Defense counsel stated the trial would be jury waived.

The prosecutor moved to recuse the judge on the ground that he had "already preestablished [at the probation surrender hearing] a finding as to the credibility of the officers" involved in the case. The judge denied the motion, stating that he had not "found anything concerning the credibility of the officers."

The judge next proceeded to establish that the defendant had voluntarily waived his right to a jury trial. After that, he directed the prosecutor to call her first witness. The prosecutor stated she could not move for trial based on the allowance of the defendant's motion in limine. Defense counsel moved for a required finding of not guilty. The prosecutor objected to the procedure: "If your Honor wishes to dismiss the case for noncomplian[ce] with discovery I would suggest that would certainly be an appropriate action at this time. Having not moved for trial, I don't know how we can have a directed verdict." The judge then suggested that defense counsel call a witness, to avoid a dismissal without prejudice. The judge explained that, to rule on the motion for a required finding, and for jeopardy to attach, "there has to be a witness called and a witness sworn."

Over the prosecutor's objection, defense counsel called the defendant's daughter to testify. The daughter was sworn, stated her name and testified that the defendant is her father. Defense counsel then indicated that she had no further questions, and moved for a required finding of not guilty. The judge allowed the motion over the prosecutor's objection. The Commonwealth's petition under G. L. c. 211, § 3, followed.

1. The order excluding the Commonwealth's evidence pertaining to the school zone measurements and drug analysis was erroneous. The order is, in essence, an inappropriate sanction for the Commonwealth's alleged failure to provide discovery to the defendant in keeping with the pretrial conference report. See Mass. R. Crim. P. 14 (c), 378 Mass. 874 (1979). See also Commonwealth v. Pope, 19 Mass. App. Ct. 627, 630 n.3 (1985) ("Agreements in written pretrial conference reports may be the equivalent of discovery orders," and, thus, subject to rule 14 [c]). No clear date for compliance, however, was specified in the report, as manifested by the "unagreed" endorsement entered next to the requested compliance date. In addition,

the defendant repeated that, notwithstanding lack of discovery, he was ready for trial on the day scheduled for trial. He was aware of the analysis contained in the drug certificates and of the school zone measurements. The defendant's counsel never sought a continuance to make an "independent investigation." There is also no demonstration by the defendant of even a hint of prejudice to his case. Specifically, there is no showing that the drug analysis was wrong or that the measurements were inaccurate. Nor is there anything to indicate that the Commonwealth acted intentionally or in bad faith. See *Commonwealth* v. *Donovan*, 395 Mass. 20, 24 (1985), and cases cited. Certainly, less severe and more appropriate remedies were available, and should have been invoked. See Mass. R. Crim. P. 14 (c) (1). See also *Commonwealth* v. *Dranka*, 46 Mass. App. Ct. 38, 42 (1998), quoting *Chappee* v. *Vose*, 843 F.2d 25, 31 (1st Cir. 1988) (acknowledging that sanction of excluding evidence "should be reserved for 'hard core transgressions' ").

The error was exacerbated by the judge's lightning rush to sanction the Commonwealth, and then immediately to call the case to trial, in an effort unjustly to deprive the Commonwealth of its right to pursue an interlocutory appeal pursuant to Mass.R. Crim. P. 15 (a) (2) and (b) (1), as appearing in 422 Mass. 1501 (1996) (providing aggrieved party ten days from "the issuance of notice of the order being appealed" to file application for leave to appeal "an order determining a motion to suppress evidence prior to trial"). See *Commonwealth* v. *Anderson*, 401 Mass. 133, 135 (1987) (applying rule to motion in limine and stating "if a motion to *exclude* all or most of the Commonwealth's incriminating evidence is allowed, and if, as a practical matter, that ruling [if permitted to stand] would terminate the prosecution, the Commonwealth may seek leave to appeal pursuant to [rule 15 (a) (2)]"). This action appears deliberate, as the judge undoubtedly was aware of Mass. R. Crim. P. 15 (c), as appearing in 422 Mass. 1501 (1996) ("Any motion the determination of which may be appealed pursuant to this rule shall be decided by the judge before the defendant is placed in jeopardy under established rules of law"), and Mass. R. Crim. P. 15 (e), as appearing in 422 Mass. 1501 (1996) ("If the trial court issues an order which is subject to the interlocu-

tory procedures herein, the trial of the case shall be stayed and
the defendant shall not be placed in jeopardy until interlocutory
review has been waived or the period specified in [the rule] for
instituting interlocutory procedures has expired"). Judicial ac-
tion to circumvent a rule is inappropriate.[2]

2. The defendant was not placed in jeopardy at the proceeding.
The general principles governing jeopardy are straightforward.
Under the double jeopardy doctrine, a defendant cannot be
prosecuted a second time for the same offense after having been
acquitted.[3] *Mahoney* v. *Commonwealth*, 415 Mass. 278, 283
(1993). In a bench trial, "jeopardy attaches when the court
begins to hear evidence." *Commonwealth* v. *Ludwig*, 370 Mass.
31, 33 (1976), quoting *Serfass* v. *United States*, 420 U.S. 377,
388 (1975). "[T]he purposes of, and the policies which animate,
the Double Jeopardy Clause . . . are clear. 'The constitutional
prohibition against "double jeopardy" was designed to protect
an individual from being subjected to the hazards of trial and
possible conviction more than once for an alleged offense. . . .
The underlying idea, one that is deeply ingrained in at least the
Anglo-American system of jurisprudence, is that the State with
all its resources and power should not be allowed to make
repeated attempts to convict an individual for an alleged of-
fense, thereby subjecting him to embarrassment, expense and
ordeal and compelling him to live in a continuing state of
anxiety and insecurity, as well as enhancing the possibility that
even though innocent he may be found guilty.' " *Serfass* v.
*United States*, *supra* at 387-388, quoting *Green* v. *United States*,
355 U.S. 184, 187-188 (1957).

---

[2]The single justice denied the Commonwealth's G. L. c. 211, § 3, petition
with respect to the exclusion order on the ground that the Commonwealth had
an alternative appellate remedy under Mass. R. Crim. P. 15 (a) (2) and (b) (1),
as appearing in 422 Mass. 1501 (1996). We agree that that remedy *should*
have been available to the Commonwealth, but where the judge's actions er-
roneously deprived the Commonwealth of its opportunity to pursue that
remedy, relief may be pursued under G. L. c. 211, § 3.

[3]The double jeopardy doctrine derives from the Fifth Amendment to the
United States Constitution, which is made applicable to the States through the
due process clause of the Fourteenth Amendment. *Benton* v. *Maryland*, 395
U.S. 784, 794 (1969). The doctrine has long been part of our common law,
and is part of our statutory law. *Commonwealth* v. *Woods*, 414 Mass. 343,
346, cert. denied, 510 U.S. 815 (1993).

Not every "acquittal" constitutes an acquittal for double jeopardy purposes. See *Commonwealth* v. *Babb*, 389 Mass. 275, 281 (1983). A true acquittal requires a verdict on "the facts and merits." G. L. c. 263, § 7. This requirement was explained in *United States* v. *Martin Linen Supply Co.*, 430 U.S. 564, 571 (1977): "[W]hat constitutes an 'acquittal' is not to be controlled by the form of the judge's action. . . . Rather, we must determine whether the ruling of the judge, whatever its label, actually represents a resolution, correct or not, of some or all of the factual elements of the offense charged." See *United States* v. *Scott*, 437 U.S. 82, 96 (1978), quoting *United States* v. *Jorn*, 400 U.S. 470, 478 n.7 (1971) (opinion of Harlan, J.) (observing that "the trial judge's characterization of his own action cannot control the classification of the action"); *Serfass* v. *United States, supra* at 391-392 ("Without risk of a determination of guilt, jeopardy does not attach, and neither an appeal nor further prosecution constitutes double jeopardy"). Thus, before according protection from double jeopardy based on an "acquittal," or its functional equivalent, we are obligated to look beyond the judge's characterization of his action to determine the legal substance of the proceeding.

In this case, the judge announced that the proceeding constituted a trial "because I'm saying it is." However, the judge's actions effectively ensured that there was no "trial" on "the facts and merits." He first, as previously explained, erroneously excluded the Commonwealth's evidence and deprived the prosecutor of the right to an appeal provided by Mass. R. Crim. P. 15, as appearing in 422 Mass. 1501 (1995). The judge then urged defense counsel (who obliged) to call a witness so that the judge could terminate the prosecution with an assurance that jeopardy had attached. The witness's testimony, identifying the defendant as her father, had no bearing on the defendant's guilt or innocence. The defendant was never in danger of conviction. Because there was no trial on the merits, and no risk of the defendant's conviction, jeopardy did not attach. See *Commonwealth* v. *Friend*, 393 Mass. 310, 314 (1984). The proceeding constituted an artifice designed to punish the Commonwealth, and it did not, in any realistic way, comport with the policy underlying the rule of double jeopardy. We would

exalt form over substance if we impressed a constitutional imperative on a proceeding which "scarcely [demonstrates] a picture of an all-powerful [S]tate relentlessly pursuing a defendant who had either been found not guilty or who had at least insisted on having the issue of guilt submitted to the first trier of fact." *United States* v. *Scott, supra* at 96.

While the judge was understandably frustrated with the prosecutor for failing to comply with discovery requirements prior to trial, his rulings deprived the public of its interest "in just disposition of the case." *Commonwealth* v. *Hosmer,* 49 Mass. App. Ct. 188, 191 (2000). See *Garrett* v. *United States,* 471 U.S. 773, 796 (1985) (O'Connor, J., concurring) ("Decisions by this Court have consistently recognized that the finality guaranteed by the Double Jeopardy Clause is not absolute, but instead must accommodate the societal interest in prosecuting and convicting those who violate the law"); *United States* v. *Scott, supra* at 100, quoting *Arizona* v. *Washington,* 434 U.S. 497, 509 (1978) (public has "valued right to 'one complete opportunity to convict those who have violated its laws' "). Also, the judge's deliberately timed actions improperly sought to cut off any appellate review, thus circumscribing the public's interest in judicial accountability.

Double jeopardy principles will often foreclose any remedy for, or shield from review, a trial judge's errors or misconduct. See, e.g., *Sanabria* v. *United States,* 437 U.S. 54, 58-59, 68-69 (1978) (despite judge's erroneous exclusion of key portion of prosecutor's case against defendant, judge's directed verdict of acquittal barred reprosecution of offense); *Commonwealth* v. *Super,* 431 Mass. 492, 496-497 (2000) (despite judge's abuse of discretion in failing to grant Commonwealth's motion for continuance, jeopardy attached when jurors were empanelled and sworn, thus requiring defendant's acquittal); *Commonwealth* v. *Clemmons,* 370 Mass. 288, 293-295 (1976) (reversing defendant's conviction on double jeopardy grounds despite judge's error). Nevertheless, the shield is not impenetrable. In appropriate circumstances, an appellate court will scrutinize a trial judge's label of "acquittal," and conclude that the action was not an "acquittal" for double jeopardy purposes. See, e.g., *United States* v. *Gonzales,* 617 F.2d 1358, 1362 (9th Cir.), cert.

denied sub nom. *Patel* v. *United States*, 449 U.S. 899 (1980) (judge's "acquittal" based on unavailability of material witness was appealable order of dismissal); *People* v. *Deems*, 81 Ill. 2d 384, 390-391 (1980), cert. denied, 450 U.S. 925 (1981) (concluding that "acquittal" after trial, at which defendant was only witness sworn but did not testify, was not "acquittal" for double jeopardy purposes); *Pastrana* v. *Baker*, 55 N.Y.2d 315, 319 (1982) (concluding "acquittal" was not "acquittal" for double jeopardy purposes because proceedings did not constitute adjudication of facts). We agree with these decisions.[4] One commentator has aptly summed up the situation in these words:

> "The appellate courts should examine the trial procedures that disadvantaged the prosecution, to determine whether the defendant was indeed at risk of conviction. If the trial court structured a procedure that had a superficial appearance of placing the defendant in jeopardy but did not offer the prosecution a realistic opportunity to present its case, the court should treat the case as one in which jeopardy never attached. The appellate courts should allow the prosecution to pursue review of the trial court's rulings or further prosecution of the defendant. While trial judges should be permitted to protect defendants through rulings that are subject to appellate review, such as dismissal of the charges, they should not be permitted to manipulate

---

[4]There are decisions, which we choose not to follow, arguably tending to a contrary position. See, e.g., *Goolsby* v. *Hutto*, 691 F.2d 199, 200-202 (4th Cir. 1982) (concluding that, where judge denied prosecutor's motion to nol pros offense so that prosecutor could obtain indictment on greater offense and conducted bench trial over prosecutor's objection, at which prosecutor presented no evidence, jeopardy had attached despite Commonwealth's claim "that jeopardy had not attached . . . because there was no evidence introduced and thus the petitioner never was in danger of conviction"); *Daff* v. *State*, 317 Md. 678, 681, 686-689 (1989) (concluding that judge's acquittal, when prosecutor unsuccessfully sought continuance, did not present evidence and refused to nol pros case, barred retrial even though no jury had been selected and no witness had testified); *People* v. *Brower*, 164 Mich. App. 242, 243, 246 (1987), cert. denied, 488 U.S. 933 (1988) (concluding, where trial judge denied prosecutor's request for continuance based on fact that two police witnesses had been detained in another court and conducted bench trial at which defendant was called to testify, but refused, asserting Fifth Amendment privilege, that defendant "was put in jeopardy once the first witness was sworn, regardless of the fact that the witness subsequently did not answer questions").

> trial procedure to defeat the public interests in an op-
> portunity to pursue a conviction and in judicial
> accountability. A sham proceeding . . . does not put the
> defendant to trial before the fact finder."

Poulin, Double Jeopardy and Judicial Accountability: When is an Acquittal Not an Acquittal?, 27 Ariz. St. L.J. 953, 969 (1995).

Finally, we reject the defendant's contention that *Commonwealth* v. *Lowder*, 432 Mass. 92 (2000), and *Commonwealth* v. *Super*, 431 Mass. 492 (2000), are controlling. These cases are distinguishable. In both the *Lowder* and *Super* cases, a jury had been empanelled and sworn, thus invoking the defendants' double jeopardy "interest[s] in retaining a chosen jury." *Commonwealth* v. *Johnson*, 426 Mass. 617, 624 (1998). See *Commonwealth* v. *Lowder*, *supra* at 93, 105; *Commonwealth* v. *Super*, *supra* at 494-495. In *Lowder*, the prosecutor had delivered his opening statement, and was fully ready to present his case to the jury. *Commonwealth* v. *Lowder*, *supra* at 93. In *Super*, although the prosecutor had originally indicated that his witnesses were unavailable for trial on such short notice, he later informed the judge that one of his witnesses, "although displeased . . . would come when requested to do so," and did not inform the judge that he was unable to secure a different police officer to testify (the judge had suggested that he call another police officer to testify because the officer the prosecutor wanted to testify was not a percipient witness). *Commonwealth* v. *Super*, *supra* at 493-494. Neither of these cases involved a sham trial such as we have here.

3. A judgment is to enter in the county court vacating the order denying the Commonwealth relief under G. L. c. 211, § 3, on the exclusion order of the Boston Municipal Court, and then vacating the exclusion order. The judgment shall also set aside the entry of a required finding of not guilty on complaint no. 2000-CR-953, and direct that the case stand on the existing complaint for further proceedings in the Boston Municipal Court.

*So ordered.*