# United States Court of Appeals

## For the First Circuit

No. 03-2732

JORGE J. GONZALEZ,

Petitioner, Appellant,

v.

THE JUSTICES OF THE MUNICIPAL COURT OF BOSTON ET AL.,

Respondents, Appellees.

ON REMAND FROM THE UNITED STATES SUPREME COURT

Before

Selya, Circuit Judge,
Porfilio,* Senior Circuit Judge,
and Lynch, Circuit Judge.

Robert W. Hagopian on supplemental brief for appellant.
Thomas F. Reilly, Attorney General, Commonwealth of
Massachusetts, and David M. Lieber, Assistant Attorney General, on
supplemental brief for appellees.

August 24, 2005

_____
*Of the Tenth Circuit, sitting by designation.

**SELYA**, **Circuit Judge**.  In <u>Gonzalez</u> v. <u>Justices of the Municipal Court</u>, 382 F.3d 1 (1st Cir. 2004), we affirmed the district court's denial of petitioner-appellant Jorge J. Gonzalez's request for federal habeas relief from a pending state prosecution. Concluding that an initial proceeding based on the same complaint had not resulted in an acquittal within the cognizance of the Double Jeopardy Clause, we held that the pending prosecution did not compromise the petitioner's right not to be twice put in jeopardy for the same offense.  <u>See</u> <u>id.</u> at 10-12.  The petitioner repaired to the United States Supreme Court, where he filed a petition for a writ of certiorari.  That petition argued, inter alia, that the initial proceeding had terminated in an acquittal and, thus, triggered double jeopardy concerns.

While the certiorari petition was pending, the Court decided <u>Smith</u> v. <u>Massachusetts</u>, 125 S. Ct. 1129 (2005), a case that presented a variant of the question of what constitutes an acquittal for double jeopardy purposes.  There, the Justices concluded that the state court's midtrial grant of the defendant's motion for a judgment of acquittal under Mass. R. Crim. P. 25(a) (known colloquially as a required finding of not guilty) was an acquittal within the cognizance of the Double Jeopardy Clause because it had emanated from the trial court's evaluation of the evidence and, accordingly, constituted "a substantive determination

-2-

that the prosecution ha[d] failed to carry its burden." Id. at 1134.

Shortly thereafter, the Supreme Court granted Gonzalez's petition for certiorari pro forma, vacated our judgment, and remanded the case for consideration in light of Smith. Gonzalez v. Justices of the Mun. Ct., 125 S. Ct. 1640 (2005) (mem.). We directed the parties to file supplemental briefs addressing the effect (if any) of Smith on our prior decision. Having studied the decision in Smith and the parties' submissions, we reinstate our earlier judgment.

Our prior opinion chronicles the factual and procedural background of the case, see Gonzalez, 382 F.3d at 2-5, and it would serve no useful purpose to rehearse those details here. Instead, we assume the reader's familiarity with our original opinion and move directly to the implications of the remand order. We then examine what effect, if any, Smith may have upon the conclusions we reached in Gonzalez.

We are required to revisit this case because of the Supreme Court's use of a procedure known as a "GVR" — an acronym commonly used to describe the steps of granting certiorari, vacating the judgment below, and remanding a case to the lower court for further consideration. See, e.g., Stutson v. United States, 516 U.S. 193, 194 (1996); Lawrence v. Chater, 516 U.S. 163, 165-66 (1996). In Lawrence, the Court noted that the occasion for

-3-

a GVR order typically arises "[w]here intervening developments . . . reveal a reasonable probability that the decision below rests upon a premise that the lower court would reject if given the opportunity for further consideration, and where it appears that such a redetermination may determine the ultimate outcome of the litigation."  516 U.S. at 167.

It is important to remember, however, that a GVR order is neither an outright reversal nor an invitation to reverse; it is merely a device that allows a lower court that had rendered its decision without the benefit of an intervening clarification to have an opportunity to reconsider that decision and, if warranted, to revise or correct it.  See Pratt v. Philbrook, 109 F.3d 18, 19-20 (1st Cir. 1997).  The GVR order itself does not constitute a final determination on the merits; it does not even carry precedential weight.  See Tyler v. Cain, 533 U.S. 656, 666 n.6 (2001); Henry v. City of Rock Hill, 376 U.S. 776, 777 (1964); see also Lawrence, 516 U.S. at 178 (Scalia, J., dissenting) (suggesting that the GVR ought to be termed "no fault V & R" because it represents a "vacation of a judgment and remand without any determination of error in the judgment below").  Consequently, we do not treat the Court's GVR order as a thinly-veiled direction to alter our course; rather, the order recognizes — as do we — that the Smith decision is pertinent and requires us to determine

whether anything that the Smith Court said demands a different result.

The scope of our reconsideration is limited. As a general rule, "when the Supreme Court remands in a civil case, the court of appeals should confine its ensuing inquiry to matters coming within the specified scope of the remand." Kotler v. Am. Tobacco Co., 981 F.2d 7, 13 (1st Cir. 1992). While we retain the power "to reexamine an issue that lies beyond the circumference of the Supreme Court's specific order," the petitioner here has relied solely on the perceived commonalities between his case and Smith in his supplemental brief. There is, therefore, no reason to enlarge the scope of our review beyond the Court's direction to reconsider our original decision in light of Smith.[1]

Like Gonzalez, Smith arose from a criminal proceeding in a Massachusetts trial court. The Commonwealth had indicted Smith on three counts, including a charge of unlawful possession of a firearm. A jury trial commenced and, after the prosecution rested, the defendant moved under Mass. R. Crim. P. 25(a) for a required finding of not guilty on the firearms count, arguing that the Commonwealth had not proved an essential element of the offense. Smith, 125 S. Ct. at 1132. At sidebar, the trial judge granted the

---

[1]In carrying out that mission, our standard of review is unchanged. See Gonzalez, 382 F.3d at 7 (stating that this court would defer to the state court's findings of fact but would undertake plenary review of its resolution of issues of law).

motion, agreeing that the prosecution had not introduced sufficient evidence to prove that element. Id. at 1132-33. The judge endorsed her ruling on the docket but did not notify the jury of the acquittal on the count in question. Id. at 1133.

Smith then presented a defense to the two remaining charges. After both sides had rested but before closing arguments, the Commonwealth renewed its objection to the judgment of acquittal on the firearms charge and called the judge's attention to a previously unmentioned precedent. Id. The judge, announcing that she was "reversing" her earlier ruling, granted the Commonwealth's request to defer the sufficiency of the evidence determination until after the verdict. Id. The jury proceeded to convict Smith on all three counts and the judge allowed the verdict to stand. Id.

After exhausting avenues of appellate review available in the state courts, Smith sought a writ of certiorari from the United States Supreme Court. He posited that the trial court's grant of the Rule 25(a) motion at sidebar was an acquittal and that its later submission of the firearms count to the jury subjected him to "postacquittal factfinding proceedings going to guilt or innocence" in violation of the Double Jeopardy Clause. See id. at 1134 (quoting Smalis v. Pennsylvania, 476 U.S. 140, 145 (1986)).

The Court granted certiorari and, in a 5-4 decision, reversed Smith's conviction on the firearms charge. The Court's

analysis of "whether the judge's initial ruling on petitioner's motion was, in fact, a judgment of acquittal," id., grounds our inquiry. Significantly, the Smith Court did not purport to unsettle the foundations of what constitutes an acquittal for double jeopardy purposes but, rather, relied on the traditional definition, which equates such an acquittal with a disposition that "actually represents a resolution, correct or not, of some or all of the factual elements of the offense charged." Id. (quoting United States v. Martin Linen Supply Co., 430 U.S. 564, 571 (1977)).

The Court rejected the Commonwealth's effort to draw distinctions for double jeopardy purposes based on the characterization of a finding of insufficiency of the evidence as a legal rather than a factual determination and held that a finding that the evidence was insufficient as a matter of law is a resolution of the factual elements of the charge. See id. at 1134-35. It emphasized that "the judge 'evaluated the [Commonwealth's] evidence and determined that it was legally insufficient to sustain a conviction.'" Id. at 1135 (alteration in original) (quoting Martin Linen, 430 U.S. at 572).

Seen in this light, it is readily evident that Smith did not alter the definition of an acquittal previously articulated by the Court in Martin Linen. To the contrary, the Smith Court confirmed that definition. See id. at 1134 (explaining that "a

-7-

substantive determination that the prosecution has failed to carry its burden," made by the judge pursuant to a procedure for rendering a directed verdict of acquittal, is an acquittal for double jeopardy purposes). There was no serious question in <u>Smith</u> about whether the trial judge had, in the ordinary course of business, entered a judgment of acquittal at sidebar; the perplexing question was whether that acquittal was open to later revision by the trial court. <u>See</u> <u>id.</u> at 1135. The Supreme Court concluded that it was not. <u>Id.</u> at 1137.

We followed the same general approach in <u>Gonzalez</u>. There, we relied on the <u>Martin Linen</u> definition and applied the same language from that case to determine whether the trial court's actions had resulted in what amounted to an acquittal for double jeopardy purposes. <u>See</u> <u>Gonzalez</u>, 382 F.3d at 10-11. Thus, <u>Smith</u> bears witness to the fact that we applied the correct definition of an acquittal. The only question that remains, then, is whether the similarities between this case and <u>Smith</u> indicate that we misapplied the <u>Martin Linen</u> definition of an acquittal. We answer that question in the negative because this case is factually distinct from <u>Smith</u> in relevant respects.

To be sure, both cases involved a request, made in accordance with Massachusetts procedural rules, for a required finding of not guilty and the trial judge's subsequent granting of that request. But the similarities end there. In <u>Smith</u>, there was

no doubt that when the trial judge entertained the Rule 25(a) motion at sidebar, her examination involved a genuine effort to determine the sufficiency of the evidence presented. See Smith, 125 S. Ct. at 1132-33. There was no suggestion that the judge's finding was anything other than what it appeared to be: a merits-directed finding of not guilty predicated on the perceived insufficiency of the prosecution's evidence. Right or wrong, that finding resulted in a bona fide acquittal.

Here, however, the trial court's "finding" had no basis in any assessment of the legal sufficiency of the facts presented. Indeed, no facts of any relevance to the defendant's guilt or innocence were presented. The sole witness, called by the defense, was the petitioner's daughter, who possessed no knowledge relevant to the charged crimes. See Gonzalez, 382 F.3d at 10. Taking a functional approach comporting with the Martin Linen Court's instruction that we determine whether "the ruling of the judge, whatever its label, actually represents a resolution, correct or not" of the sufficiency of the factual elements of the case, 430 U.S. at 571 (emphasis supplied), we concluded that the so-called acquittal was a sheep in wolf's clothing — "an artifice designed to dress a dismissal without prejudice in a raiment more protective of a possible double jeopardy defense." Gonzalez, 382 F.3d at 10.

Refined to bare essence, we concluded that Martin Linen's functional approach to the task of characterizing a trial court's

determination as an acquittal vel non counseled against our taking the judge's ukase at face value. See id. Because the judge had labeled what was (and should have been) a dismissal for want of prosecution as a required finding of not guilty, and thus had manufactured a pseudo-acquittal, we refused to accord that pseudo-acquittal preclusive effect for double jeopardy purposes. Id. at 10.

While the Supreme Court may ultimately determine that the language in Martin Linen, 430 U.S. at 571, though suggesting a functional approach to the characterization of actions that might be deemed an acquittal, should not be so read, nothing in Smith speaks either to that question or to the more specific question of how to characterize a dismissal for want of prosecution deliberately and misleadingly packaged as a judgment of acquittal. Nor does Smith suggest any potential limits on Martin Linen's functional approach. Therefore, Smith neither contradicts nor undermines our application of the Martin Linen definition of an acquittal.[2]

We need go no further. Because Smith does not indicate that our original decision rested on a faulty premise, we adhere to

---

[2]Because we conclude that Smith, fairly read, does not alter our determination that the state court proceedings in this case did not result in an acquittal, we need not address the related question, taken up in Smith, 125 S. Ct. at 1135-37, as to when an acquittal, once issued, might be deemed "automatically, or even presumptively, nonfinal," id. at 1137.

that decision and once again affirm the district court's denial of the petitioner's request for habeas relief.  Our earlier judgment must, therefore, be reinstated.

**So Ordered**.