# United States Court of Appeals
## For the First Circuit

No. 03-1949

DIANA VÁZQUEZ-VALENTÍN,

Plaintiff, Appellee,

v.

VICTOR J. SANTIAGO-DÍAZ, Individually and as Mayor of Toa Baja;
MUNICIPALITY OF TOA BAJA; MILAGROS DELGADO-ORTIZ,
Individually and as Human Resources Director of Toa Baja,

Defendants, Appellants.

ON REMAND FROM THE UNITED STATES SUPREME COURT

Before

Torruella, Lynch, and Lipez,
Circuit Judges.

Salvador J. Antonetti-Stutts, Solicitor General, Mariana
Negrón-Vargas and Maite D. Oronoz-Rodríguez, Deputy Solicitors
General, and Susana I. Peñagarícano-Brown, Assistant Solicitor
General, on supplemental brief for appellants in their individual
capacities.

Jesus M. Hernández-Sánchez and Guillermo A. Macari-Grillo on
supplemental brief for appellee.

August 22, 2006

**LIPEZ, Circuit Judge.** In Vázquez-Valentín v. Santiago-Díaz, 385 F.3d 23 (1st Cir. 2004) (Vázquez I), we reversed a jury's verdict that Diana Vázquez-Valentín (Vázquez) had been subjected to political discrimination by her former employers, the municipality of Toa Baja and its mayor and human resources director. We reviewed the denial of the defendants' Rule 50(a) motion for judgment as a matter of law based on the sufficiency of the evidence, despite the defendants' failure to preserve that ground of appeal pursuant to Fedg. R. Civ. P. 50(b).[1] Vázquez petitioned for certiorari. After its decision in Unitherm Food Sys., Inc. v. Swift-Eckrich, Inc., 126 S. Ct. 980 (2006), the Supreme Court granted Vázquez's petition for certiorari, vacated our 2004 decision, and remanded the case to us for reconsideration. See Vázquez-Valentín v. Santiago-Díaz, 126 S. Ct. 1329 (2006). Unitherm established that a party "may not challenge the sufficiency of the evidence on appeal on the basis of the District

_____

[1] During a jury trial under the federal rules, a party may move during trial and/or at the conclusion of the evidence for judgment as a matter of law. Fed. R. Civ. P. 50(a). If the district court denies a Rule 50(a) motion made at the close of all the evidence, the party may submit a "renewed" motion, under Rule 50(b), after the jury returns its verdict. See also Proposed Amendment to Rule 50, Subdivisions (a) and (b), effective December 1, 2006, absent contrary Congressional action, Advisory Committee Notes ("Rule 50(b) is amended to permit renewal of any Rule 50(a) motion for judgment as a matter of law, deleting the requirement that a motion be made at the close of all the evidence."). In addition to not filing a Rule 50(b) motion, the defendants also did not address the sufficiency or weight of the evidence in a motion for a new trial pursuant to Rule 59.

Court's denial of its Rule 50(a) motion" alone. <u>Unitherm</u>, 126 S. Ct. at 988.

Upon reconsideration, we conclude that the jury's verdict in favor of Vázquez must now be vacated because of the district court's exclusion of certain evidence presented by the defendants -- a point argued by the defendants in <u>Vázquez I</u> but not decided by us because of our focus on the sufficiency of the evidence. Our decision to vacate on this ground also requires that we remand this case for further proceedings in the district court.

## I.

After the Supreme Court's remand, we instructed the parties to brief further "the following three issues addressed in the original appellate briefs: (1) the district court's evidentiary rulings, (2) the district court's order that the plaintiff be reinstated, and (3) the qualified immunity issue." Despite our instruction, the parties used much of their supplemental briefing to argue about the scope of the Supreme Court's remand order and of the applicability of the <u>Unitherm</u> decision to this case. Vázquez argues that we have to reinstate the jury's verdict in her favor in light of the Supreme Court's decision. The defendants argue that we may still order judgment as a matter of law in their favor, on sufficiency of the evidence grounds. We pause briefly to explain that the parties have misunderstood the significance of the Supreme Court's remand order.

-3-

The complete text of the Supreme Court's order in this case is as follows:

> The petition for writ of certiorari is granted. The judgment is vacated and the case is remanded to the United States Court of Appeals for the First Circuit for further consideration in light of <u>Unitherm Food Sys.</u> v. <u>Swift Eckrich</u>, 546 U.S. ___ (2006).

Supreme Court orders of this type, colloquially termed "GVRs," meaning "granted, vacated, and remanded," do not resolve a case. <u>See</u> <u>Gonzalez</u> v. <u>Justices of the Municipal Court of Boston</u>, 420 F.3d 5, 7 (1st Cir. 2005). Rather, they tell us that we misapprehended the law when we entered the judgment now vacated, and that we must reconsider the case now remanded to us in light of the Supreme Court's opinion. <u>Id.</u> Sometimes, despite the intervening precedent, we will enter the same judgment because, after due consideration, we conclude that the new precedent does not require a different outcome. <u>See</u>, <u>e.g.</u>, <u>United States</u> v. <u>Burnette</u>, 423 F.3d 22 (1st Cir. 2005). Other times, the intervening precedent will result in a different outcome.

Here, the Supreme Court's decision in <u>Unitherm</u> does not permit us to conclude once again that a judgment must be entered for the defendants because of the insufficiency of Vázquez's evidence. Under <u>Unitherm</u>, we cannot review the denial of a Rule 50(a) motion based on the sufficiency of the evidence when the party appealing the verdict failed to renew its sufficiency challenge in the district court pursuant to Rule 50(b). <u>See</u>

-4-

Unitherm, 126 S. Ct. at 987 ("[A] party's Rule 50(a) motion . . . cannot be appealed unless that motion is renewed pursuant to Rule 50(b).").

Vázquez is equally wrong in arguing that we must reinstate the jury's verdict. In our 2004 decision, we did not reach the merits of several of the defendants' arguments for a new trial because we focused instead on the sufficiency of the evidence. In fact, we noted that we had doubts about the district court's evidentiary rulings but we did "not have to decide the issue." Vázquez I, 385 F.3d at 25 n.1. In light of the remand from the Supreme Court, we must now address the rulings that prompted those doubts. See Gonzalez, 420 F.3d at 8.[2]

## II.

We recited the facts at length in Vázquez I, 385 F.3d at 23-29. We incorporate those facts by reference, summarizing only briefly the details most pertinent to our discussion here.[3] Vázquez claimed that she was demoted as a result of the defendants'

---

[2] Unitherm does not mean that a party has to file a post verdict motion in order to preserve an evidentiary objection for appeal. Unitherm does not change the rule "that once the district court 'makes a definitive ruling on the record admitting . . . evidence, either at or before trial, a party need not renew an objection . . . to preserve a claim of error for appeal.'" Zachar v. Lee, 363 F.3d 70, 75 (1st Cir. 2004) (quoting Fed. R. Evid. 103(a)(2)). See also Wright & Graham, Federal Practice and Procedure: Evidence 2d §§ 5032-5034.

[3] To be clear, we do not rely on the vacated legal conclusions in Vázquez I for our decision here.

animus against her political affiliation. The defendants, members of the municipal administration of Toa Baja that took charge in January 2001, claimed that she was demoted because the previous municipal administration had promoted her illegally and the Commonwealth of Puerto Rico had mandated corrective action.

In support of this defense, the defendants invoked an audit of municipal personnel practices that the Comptroller of Puerto Rico had completed during the last months of the previous administration. See Vázquez I, 385 F.3d at 25 n.1. The audit revealed that Toa Baja had run afoul of numerous Commonwealth laws relating to the appointment and promotion of municipal employees. Under Puerto Rico law, "all municipal jobs are governed by so-called job classification plans that are adopted locally. These plans set forth the occupational groups and personnel structure of the municipality, including the primary responsibilities and employment requirements for each position in city government." Vázquez I, 385 F.3d at 26. These job classification plans generally must be approved by the Commonwealth of Puerto Rico before they can be implemented. Once a job classification plan has been approved, municipalities normally must use a merit system to fill the career positions the plan creates. See Gonzalez-De-Blasini v. Family Dept., 377 F.3d 81, 86 (1st Cir. 2004). "Under this system, career employees must, among other

requirements, pass a competitive examination to be eligible for appointment or promotion to a career position." Id.

According to the Comptroller's audit report, Toa Baja had adhered neither to the requirement that it submit its job classification plans to the Commonwealth for approval, nor the requirement that it use a merit system to fill jobs and make promotions. The municipality's main structural violations were its use of an unapproved 1997 job classification plan (Toa Baja's most recent properly-approved plan dated from 1991) and its habit of ignoring the normal merit-based appointment system in favor of a system by which relatives and allies of the mayor routinely received desirable posts.

Under Puerto Rico law, personnel appointments made in violation of Commonwealth laws and regulations normally "are null and void ab initio." Gonzalez-De-Blasini, 377 F.3d at 86 (internal quotation marks omitted). Accordingly, the Comptroller's audit report "recommended" that the municipality take corrective action to undo any illegal personnel actions. The same report warned that "[f]ailure to heed a recommendation in an audit report from this Office, without just cause, may constitute a violation of [Puerto Rico law]."

In reaction to the audit report, the outgoing municipal administration began reviewing personnel files and, according to a letter it sent to Commonwealth officials, "encountered cases of

-7-

employees that did not meet the requirements of their position." Commonwealth officials responded that these employees would "need to be re-routed to a classification for which they meet the requirements." Before any reclassifications took place, the November 2000 election happened, and the previous administration -- the one responsible for the violations cited by the audit report -- was replaced by an administration headed by the defendant mayor.

Upon taking office, the defendants made several inquiries to Commonwealth officials about the audit report and its recommendations. In particular, the defendants asked whether all employee appointments pursuant to the municipality's 1997 personnel plan, which had not been properly approved, would have to be rescinded. The Commonwealth's answer was that "the 1997 plans have no validity" so "we recommend [] the alternative of reclassifying [the affected employees] into positions for which they meet the requirements in accordance with the 1991 plan." In light of this guidance, the new administration adopted a corrective action plan that called for a thorough review of personnel files and reassignment of any improperly-promoted employees.

The resulting reviews and reclassifications had a large effect on municipal employees. As we noted in Vázquez I, by the time of the trial, "around six hundred files had been evaluated." 385 F.3d at 26. This number represented slightly less than half of the municipality's workforce. Of those employees whose files had

-8-

been evaluated, roughly half "had sought an informal hearing regarding the personnel action that resulted from the review." Id. Vázquez was one of the many employees who was reclassified as a result of the new administration's review and who sought a hearing.

Vázquez started working for Toa Baja while a college student in 1985, as a "transitory" office clerk. She was appointed to the career position of "Office Worker / Typist I" in 1989. She held that post until the summer of 1993, when she was elevated to "Secretary III." Less than two months later, she was promoted again to "Assistant Director." The post "Assistant Director" was later renamed "Executive Director II," the position Vázquez held when the new administration took office. See Vázquez I, 385 F.3d at 28. When the defendants reviewed Vázquez's personnel records, they decided that both of her 1993 promotions had been in violation of the 1991 plan. Specifically, the defendants later explained to Vázquez that her promotion from "Office Worker / Typist I" to "Secretary III" had been improper because she had not had the required courses in business skills or typing, and because she had not spent the required year as a "Secretary II" or equivalent. Her second promotion, they said, was improper for want of the required experience and because it had occurred so soon after the previous promotion. In the spring of 2001, the defendants informed Vázquez that the illegality of her 1993 promotions meant that she would have to be demoted to the position of "Office Worker / Typist I,"

the same post that she had assumed in 1989. That job had no supervisory responsibilities and paid less than half as much as her "Executive Director II" position.

Vázquez protested that she was a college graduate with many years of experience in municipal government, and that her college transcript clearly showed that she had taken typewriting and shorthand courses. (Apparently, the transcript was not in her personnel file.) When she learned that she would be demoted despite her educational credentials and experience, Vázquez asked for and was granted a hearing before an administrative hearing officer. Vázquez later testified that the hearing lasted about five minutes. The hearing officer determined in a written decision that Vázquez had been hired and promoted illegally. Shortly after her demotion became effective, Vázquez resigned her new position. Suspecting that the true reason for her demotion was her political affiliation with the party that had lost the 2000 election, she timely filed this case alleging political discrimination.

**III.**

At the trial in April and May 2002, to demonstrate that they had acted in good faith in demoting Vázquez, the defendants sought to introduce as evidence the Comptroller's audit and the communications between the municipal administration and Commonwealth officials that followed. The defendants made these efforts during the testimony of their two principal witnesses,

defendant Milagros Delgado-Ortiz (Delgado), who was the new administration's human resources director, and the defendant mayor, Victor Santiago-Díaz (Díaz). During Delgado's testimony, the defendants attempted to introduce the audit report itself and a four-page letter to her from the Commonwealth Office of Municipal Affairs explaining that the 1997 personnel plan was invalid. The defendants also attempted to have Delgado testify as to the contents of these documents. During Díaz's testimony, the defendants attempted to introduce a letter Díaz sent to Commonwealth officials asking what the municipality should do in light of the earlier documents, and two letters from the Commonwealth in response, giving the advice that the municipality should reclassify its employees. Alternatively, the defendants sought to have Díaz testify about these letters.

The district court excluded all of this proffered evidence on two grounds. The district court cited the hearsay rule and also noted generally that it did not want to expose the jury to the legal conclusions in the documents. Referring specifically to the letter from the Commonwealth officials to Delgado, the district court stated that the document "is a conclusion of law and is hearsay [and] for this reason [] cannot be admitted as evidence." The district court also expressed concern that the audit report could be unfairly prejudicial to Vázquez because it contained many statements that did not pertain to her appointment specifically.

See Fed. R. Evid. 403. On appeal, Vázquez echoes these rationales, which are unpersuasive.

As the defendants point out, the excluded documents were not hearsay because they were not "offered in evidence to prove the truth of the matter asserted." Fed. R. Evid. 801(c); see also Ramírez-Rodríguez v. Boehringer Ingelheim Pharmaceuticals, Inc., 425 F.3d 67, 76-77 (1st Cir. 2005). We indicated as much in Vázquez I: "The exclusion of these documents as hearsay is troubling. So crucial to the defendants' case, and offered as an explanation for the personnel actions undertaken by the defendants rather than for the truth of the personnel irregularities described in the documents, these documents are not hearsay, and they were highly relevant. Their exclusion might well have justified a new trial." 385 F.3d at 25 n.1. The "matters asserted" in the documents were that many Toa Baja employees had been hired without due regard for procedures, that the Mayor and his administration would be liable under the Commonwealth's ethics laws if they did not take measures to remedy the hiring abuses of the previous administration, and that the approach of reviewing personnel files and reclassifying employees was consistent with the Commonwealth's guidance. The defendants "offer[ed] these assertions to explain the basis for [their] decision to [demote Vázquez]." Ramírez-Rodríguez, 425 F.3d at 77. The issue at trial was not whether Vázquez was appointed properly or whether the new administration

was legally liable for the abuses of its predecessors.  Rather, the issue for the jury was whether the defendants had demoted Vázquez as a result of her political affiliation, or for some other reason. "In short, the documents were not offered to prove" that the new administration was legally obligated to demote Vázquez, "but rather to demonstrate that h[er] superiors had reason, based on a thorough investigation, to believe that [they were required to demote her]." Id.  Accordingly, the documents were not hearsay.

The suggestion that the documents were inadmissible legal opinions fails for similar reasons.  The documents did contain legal conclusions about the propriety of the previous municipal administration's personnel decisions.  But this is not a case about the propriety of Vázquez's appointment.[4]  The critical issue in this case -- the ultimate issue for the jury -- was determining the defendants' motivations for demoting Vázquez.  The documents offered no legal conclusions about those motivations.  Rather, they described a neutral evaluation of the municipality's personnel policies that, if truly relied upon, provided a non-discriminatory basis for Vázquez's demotion.  As we explained in a case involving a similar situation, while the documents were "not admissible for

---

[4] Vázquez's due process claim, which the district court dismissed on the defendants' Rule 50(a) motion, after the presentation of evidence but before the case went to the jury, also did not hinge on the propriety of her appointment.  As the district court noted, Vázquez's claim was "based upon the theory that [her pre-demotion] hearing was previously determined and was in and of itself a sham."

-13-

the purpose of proving what obligations the law imposed upon the Mayor, [they were] admissible to show the Mayor's understanding at the time and his ensuing state of mind."  Gómez v. Rivera Rodríguez, 344 F.3d 103, 115 (1st Cir. 2003).

Gómez also refutes Vázquez's suggestion that the documents could have been excluded, in toto, pursuant to Rule 403. In Gómez we noted that:

> The Rule 403 balancing test applies statement by statement. See Kassel v. Gannett Co., 875 F.2d 935, 952 (1st Cir.1989) (noting that the trial court "must balance the prejudicial effect and probative value of each statement offered"). To use the rule as an instrument for the wholesale exclusion of a percipient witness's testimony would be tantamount to allowing the presider to cut down the entire tree out of fear that some of the fruit might prove rotten. Rule 403 requires more delicate pruning of evidentiary proffers. See id. (warning against throwing "out the baby with the bath water").

Id. at 115 (footnote omitted); see also id. at 115 n.7 ("[T]he need to limit the jury's use of certain testimony does not give the trial court carte blanche to exclude it entirely.").  Here, there would be a similar calculus.  If, as the district court suggested, there was some material in the audit report that was unfairly prejudicial to Vázquez, the remedy should have been to redact the offending statements from the jury's view, not to exclude the document entirely.

Anticipating the possible rejection of her arguments, Vázquez asserts that any error in excluding the documents was not

prejudicial to the defendants given other material that was admitted in evidence. She points particularly to the statements that the district court read to the jury summarizing some of the excluded material. After refusing to let Delgado testify as to the contents of the audit report, the district court told the jury that:

> The Comptroller of the Commonwealth of Puerto Rico performed an audit in which his staff examined a sample of personnel files. The report stated that certain irregularities in the placement of some employees for the Municipality of Toa Baja had been found. The report should not be taken as evidence of the truth or veracity of the statement found therein, but rather only that the report was made.

In regard to the letter to Delgado about the illegality of the 1997 personnel plan, the district court told the jury that:

> Mrs. Delgado sought advice from [the Commonwealth]. Mrs Delgado received a letter in reply to this petition for advice. The letter received by Mrs. Delgado is evidence only that she sought and received advice. The letter in no way proves that the advice she received was true or legal.

The district court also told the jury, as part of its charge, that:

> . . . according to the defendant, plaintiff's demotion was based on legitimate policy and administrative consideration devoid of any political motivation. They contend that their demotion was a direct result of the implementation of a plan to reorganize the working positions within the municipality. Defendants further claim that the Comptroller of Puerto Rico concluded that the municipality's previous administration had

-15-

> illegally appointed many employees and had
> illegally raised the compensation of others.

Finally, Vázquez points out that during cross-examination of her own testimony, the defendants persuaded the district court that Vázquez should read to the jury a letter the defendants had sent her after she submitted her resignation. The letter stated:

> I wish to clarify that the undertakings being carried out by this municipality with respect to personnel transactions are due to the findings made by the Comptroller of Puerto Rico in his audit report [] and the corrective action plan, which we are required to submit to said office, correcting the findings of irregularities in the proceedings involving appointment and selection of personnel.

Although these statements by the court and the admission of this letter reflect a laudable attempt by the court to be fair to all parties, they were not enough to render the exclusions by the court inconsequential. The court's third statement and the letter to Vázquez merely paraphrase the defendants' position at trial. They did nothing to show that the Commonwealth authorities had in fact given the legal opinions in question. The district court's summaries of the audit and one letter also failed to put the jury on notice of the contents of the excluded documents. First, the district court did not allow the jury to know that the audit report had contained the admonition that "[f]ailure to heed a recommendation in an audit report from this Office, without just cause, may constitute a violation of [Puerto Rico law]." Second, the court's summary of the letter to Delgado did not let the jury

-16-

know that the Commonwealth had recommended "reclassifying [the affected employees] into positions for which they meet the requirements in accordance with the 1991 plan," which is precisely the course the defendants claimed that they took in regard to Vázquez.  Indeed, the district court's summary of the letter did not even let the jury know that the Commonwealth had advised the defendants to reclassify employees at all.  In short, the summaries by the court simply were insufficient to convey the seriousness with which the Commonwealth had insisted that the defendants remedy the previous administration's abuses, and the specific measures they urged the defendants to take.  For these reasons, the exclusion of the documentary evidence was not harmless, and we must vacate the jury's verdict and remand for a new trial.[5]

## IV.

Several times during the proceedings, the individual defendants asked the district court to rule that they were entitled to qualified immunity.  They asked for summary judgment on that ground, a request that the district court denied because there were disputed issues of fact relating to the defendants' actual motivations for Vázquez's demotion.  The district court explained that the defendants would not be entitled to qualified immunity if

---

[5] Given this outcome, there is no need for us to discuss the defendants' contentions that the district court committed error in making certain remarks during the trial or in ordering the defendant to reinstate Vázquez as an Executive Director II.

-17-

the jury concluded that they had demoted Vázquez because of political animus.  In the court's view, such a finding would establish that an objectively reasonable municipal official would not have acted as the defendants did.[6]  The defendants also sought to invoke qualified immunity at trial, asking the district court to rule in their favor on that issue after Vázquez's case in chief and again at the close of the evidence.  The district court reserved its decision pending the jury's findings on the defendants' motivations.

In the end, according to the verdict form, the jury found that Vázquez's "political affiliation was a substantial or a motivating factor in the decision to demote her from her position as Executive Director II."  On the basis of this finding, the district court denied the defendants' motion for qualified immunity.[7]  We have now concluded that the jury verdict must be

---

[6]  "This Court has identified a three-step process for evaluating qualified immunity claims: (1) whether the claimant has alleged the deprivation of an actual constitutional right; (2) whether the right was clearly established at the time of the alleged action or inaction; and (3) if both of these questions are answered in the affirmative, whether an objectively reasonable official would have believed that the action taken violated that clearly established constitutional right."  Wilson v. City of Boston, 421 F.3d 45, 52-53 (1st Cir. 2005).  In the district court's view, because a municipal employee's right to be free of political discrimination is a clearly-established constitutional right, only the third part of the test was at issue in this case.

[7]  The defendants did not make any post-trial motion on the issue; the district court issued a thorough written order denying qualified immunity the same day the jury returned its verdict.

vacated because of the exclusion of evidence that the jury was entitled to hear.  Given the centrality of the jury verdict to the district court's denial of qualified immunity, the district court should reexamine the qualified immunity issue as well.  Indeed, we note here, as we did in Vázquez I, that the same district court judge who heard this case presided over a second political discrimination case from Toa Baja, involving the same defendants and a group of plaintiffs who brought claims similar to Vázquez's.  See Lugo v. Toa Baja, 329 F. Supp. 2d 221 (D.P.R. 2004).  In Lugo, which reached trial after our decision in Gómez, the district court appropriately allowed in evidence the same documents that it excluded in this case.  Presumably in light of that evidence, the district court concluded that the defendants in Lugo (the same defendants as here) were entitled to qualified immunity.  The documents that we discussed above clearly are relevant to the qualified immunity analysis and should be evaluated by the district court when it considers that issue again.

**Judgment vacated.  Remanded for further proceedings consistent with this opinion.  The parties shall bear their own costs.**