189 Cal.App.4th 619 (2010)
THE PEOPLE, Plaintiff and Appellant,
v.
MICHAEL ANTHONY GRAVES, Defendant and Respondent.
No. B220129.
Court of Appeals of California, Second District, Division Three.
October 25, 2010.
*623 Steve Cooley, District Attorney, Phyllis C. Asayama and Susan K. Dozier, Deputy District Attorneys, for Plaintiff and Appellant.
Rockard J. Delgadillo, City Attorney, Debbie Lew, Assistant City Attorney, and Katharine H. MacKenzie, Deputy City Attorney, for Los Angeles City Attorney's Office as Amicus Curiae on behalf of Plaintiff and Appellant.
Michael P. Judge, Public Defender, Nicholas Stewart-Oaten and John Hamilton Scott, Deputy Public Defenders, for Defendant and Respondent.

*624 OPINION
KLEIN, P. J.
The People appeal the trial court's dismissal of a criminal prosecution against defendant Michael Anthony Graves, charging him with battery and spousal battery. (Pen. Code, §§ 242, 243, subd. (e)(1).)[1] The People's appeal to the appellate division of the superior court was dismissed on the ground the order terminating the prosecution was not appealable. We granted the People's petition to transfer this case from the appellate division to this court pursuant to California Rules of Court, rule 8.1008.[2]
We transferred this case to settle an important question of law: How are courts to resolve the tension between (1) the People's right to trail a case within the time limit prescribed by the speedy trial statute, and (2) the trial court's right to deny a continuance request if the moving party has not shown good cause? Having given due consideration to the arguments presented by defendant Graves, the People, and amicus curiae, as well as to the parties' supplemental briefing, we reverse the trial court's ruling and remand for reinstatement of the misdemeanor complaint.

PROCEDURAL BACKGROUND
On December 23, 2004, the People filed a two-count misdemeanor complaint charging Graves with spousal battery on his wife, Jobeth Linstrot, and battery on his mother-in-law, Beatrice Linstrot. The charges arose out of an incident which apparently occurred inside a store.[3] Graves allegedly grabbed his wife by the hair and dragged her around. When her mother intervened, Graves allegedly pushed both women to the floor. A bench warrant was issued when Graves failed to appear for arraignment.
Three and a half years later, on June 30, 2008,[4] Graves, who was now in custody, appeared in Los Angeles County Superior Court, department 140 (Judge Lawrence Cho, presiding). Graves was arraigned on the misdemeanor complaint, pled not guilty, and was released on his own recognizance. Jobeth and Beatrice Linstrot were also in court that day. Defense counsel told the court that, having viewed the videotape from the store's security camera, the *625 Linstrots now considered the entire incident to have been an accident and they no longer wanted to pursue the case.
Judge Cho set a trial date of July 28. While doing so, he referred to the fact July 28 would be day 28 of 30. This was because Graves had been in custody when he was arraigned on June 30. (See § 1382, subd. (a)(3).)[5] At the prosecutor's request, the trial court entered a protective order it described as a "Level 1 protective order, which is not a stay-away provision." The trial court recited the terms of the protective order, the Linstrots acknowledged their understanding of the order, and Graves agreed to comply with the order. The following colloquy then occurred:
"[The prosecutor]: I'd ask that the Court order back Ms. Jo Beth Linstrot and Beatrice Linstrot for trial. [¶] ... [¶]
"The Court: All right. [¶] Ms. Jo Beth Linstrot and Ms. Beatrice Linstrot, you're both ordered to return back to court for trial on July 28, 2008."
Proceedings then adjourned.
On July 28, the case again came before Judge Cho in department 140. The defense announced ready for trial. The prosecutor said the police officer witnesses were present, but that the complaining witnesses had not shown up. The prosecutor then asked to trail the case within the statutory period. Although subpoenas had been issued for the Linstrots, the prosecutor conceded he did not know whether the Linstrots had been served. However, the prosecutor pointed out the complaining witnesses had been "ordered back on the last court date for today." Judge Cho responded: "[T]he plaintiff's motion to trail is denied as there's no proof of service shown; no good cause. The People are deemed ready." The prosecutor objected, saying the People were not ready and wanted the case to trail: "We ... believe that we have a right to trail within the statutory period."
Defense counsel then said: "[J]ust so the defense's position is clear on this, the defense is not asking the Court to deem unable to proceed. We're asking to be sent out on the 8 of 10 date [sic: actually, 28 of 30]. We're not asking for a dismissal. The defense is ready. No good cause has been shown ... to trail past the 8 of 10." Judge Cho ruled: "All right. The case is deemed ready." He ordered the case sent to department E, the master calendar court, and that it be sent out "for trial ... forthwith."
*626 Later that morning, Judge Stephanie Sautner in department E called the case for trial. When the prosecutor explained he had already asked to trail because the complaining witnesses had not appeared, Judge Sautner said, "Well, you guys know the court rule, whether you agree with it or not. It is a Rule of Court that on the date of trial you have to show good cause. And today is the date of trial. So the People were deemed ready in department 140...."
That afternoon, the case was called for trial in department B by Judge Robert O'Neill. Defense counsel announced ready and the prosecutor said the People were asking to trail the matter. Judge O'Neill refused to entertain the request: "The matter was resolved ... in department E, the master calendar, where it was transferred here for trial. So I'm not hearing any motions to continue or trail or anything like that. We're here for trial."
The following colloquy then occurred:
"[The prosecutor]: Then I believe it would bethat the court would take it upon itself to dismiss the case.
"The Court: I'm not dismissing the case. The matter's transferred here for trial. I'm ready to try the case.
"[The prosecutor]: I've been instructed not to dismiss the case either.
"The Court: Okay. Then we'll start picking a jury."
The trial court added: "[Y]ou've been deemed ready for trial by Department E, so the matter was transferred here deemed ready. So ... we're going to start jury selection."
Then there was this colloquy:
"[Defense counsel]: Your Honor, preliminarily, defense would ask for a dismissal [per section] 1385....
"The Court: Why would I do that?
"[Defense counsel]: I don't believe the People are going to have any witnesses at all.
"The Court: I don't know that.
"[Defense counsel]: I know.
*627 "The Court: All I know is I have this case transferred to me. You've announced ready, and the People have been deemed ready. I'm not dismissing this case. So there's no basis for me to dismiss this case [under section] 1385 or any other way."
A panel of prospective jurors was brought in for voir dire. When the trial court introduced the prosecutor to the jury, the prosecutor said, "Your Honor, the People respectfully refuse to participate at this time in this proceeding." At sidebar, the prosecutor confirmed he would refuse to participate. Asked what he would do once jeopardy attached, the prosecutor said, "The same thing. Unless I have an update on witnesses of some sort ... I cannot participate. I choose not to participate."
The trial court ultimately swore in a panel, gave some preliminary jury instructions, and asked if the prosecutor wanted to make an opening statement. At sidebar, the prosecutor again declined to participate.
In his opening statement, defense counsel told the jury: "You will be in a unique position in a very short period of time. You'll be asked to convict someone who's innocent based on no evidence at all. [¶] Let me say that again. You will not hear from a single witness who saw Mr. Graves do anything wrong. You will not hear from a single witness who will say that Mr. Graves touched them, hurt them, pushed them or even raised his voice to them."
When the trial court invited the prosecutor to call his first witness, the following colloquy occurred at sidebar:
"[The prosecutor]: Once again, the People decline to participate. We respectfully request to trail the case to ten of ten [sic: actually, 30 of 30]. We have no witnesses at this time.
"The Court: The request to trail has already been ruled upon. It's denied. You've been deemed ready. [¶] So you have no witnesses at this point.
"[Defense counsel]: 1118.1
"The Court: From that statement, I suspect you're making a motion for the court to dismiss the matter pursuant to Penal Code [section] 1118.1?[6]
*628 "[Defense counsel]: Yes, Your Honor. [¶] ... [¶]
"The Court: Do you wish to be heard?
"[The prosecutor]: No, Your Honor.
"The Court: That motion will be granted. This case will be dismissed."
When defense counsel subsequently requested sanctions against the prosecution "for proceeding on a case with no good-faith belief they're going to be able to prove the matter," Judge O'Neill replied: "Well, they're ... relying on some case law that expresses the right under [section] 1382 to trail within the period. However, under the Rules of Court and [section] 1050 and the policy of the Los Angeles Superior Court, 8 of 10 is the day ready for trial. Unless there is good cause shown to trail, then the request will be denied. [¶] As I understand it, the court in Department E found there was no good cause to trail.[7] No witnesses have been subpoenaed in this matter."
Judge O'Neill also remarked, "Now, I am puzzled as to why we went through this procedure. It certainly was a waste of the court's time, but I certainly don't hold [the assigned prosecutor], as following the directions of his office, responsible. And I'm not going to impose sanctions at this time upon the District Attorney's Office. They feel they have a legitimate position.... [¶] Hopefully, if they feel this is the appropriate case, they can take appellate review of it and resolve the issue once and for all, but I don't feel like spending my afternoons picking a jury in a situation like this again."
The People filed an appeal in the appellate division, challenging Judge O'Neill's dismissal of the case. The appellate division ruled the People's appeal was barred by operation of law and, therefore, had to be dismissed. The appellate division acknowledged July 28 "was day 28 of 30," and that "[a]t the prosecutor's request, the trial court ordered the alleged victims, who were present in the courtroom, to appear for trial on July 28." Nevertheless, the appellate division concluded the appeal had to be dismissed on double jeopardy grounds because the trial court had entered a judgment of acquittal after jeopardy attached.

CONTENTIONS[8]
1. The trial court's purported judgment of acquittal did not trigger double jeopardy protections.
*629 2. The trial court erroneously denied the People's request to trail within the statutory speedy trial period.

DISCUSSION

1. A sham trial does not trigger double jeopardy protection.

The appellate division reasoned that, because jeopardy attached when the jury was empaneled and sworn, and because the judgment of acquittal was granted thereafter, the People's appeal was barred by double jeopardy principles. As we explain, however, double jeopardy protections are not triggered where a defendant has faced only a sham trial.

a. Double jeopardy principles protect a defendant from multiple prosecutions for a single offense.

(1) "`The constitutional prohibition against "double jeopardy" was designed to protect an individual from being subjected to the hazards of trial and possible conviction more than once for an alleged offense.... The underlying idea, one that is deeply ingrained in at least the Anglo-American system of jurisprudence, is that the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty.' [Citations.]" (Serfass v. United States (1975) 420 U.S. 377, 387-388 [43 L.Ed.2d 265, 95 S.Ct. 1055].)
"The purpose behind the state and federal double jeopardy provisions is the same. Like decisions interpreting the federal double jeopardy clause, `[d]ecisions under the double jeopardy clause of the California Constitution ... recognize the defendant's interest in avoiding both the stress of repeated prosecutions and the enhanced risk of erroneous conviction.' [Citation.]" (People v. Monge (1997) 16 Cal.4th 826, 844 [66 Cal.Rptr.2d 853, 941 P.2d 1121].)
(2) "In the case of a jury trial, jeopardy attaches when a jury is empaneled and sworn. [Citations.] In a nonjury trial, jeopardy attaches when the court begins to hear evidence. [Citations.] The Court has consistently adhered to the view that jeopardy does not attach, and the constitutional prohibition can have no application, until a defendant is `put to trial before the trier of facts, whether the trier be a jury or a judge.'" (Serfass v. United States, supra, 420 U.S. at p. 388.) "Without risk of a determination of guilt, *630 jeopardy does not attach, and neither an appeal nor further prosecution constitutes double jeopardy." (Id. at pp. 391-392, italics added.)
(3) The Supreme Court has also "emphasized that what constitutes an `acquittal' is not to be controlled by the form of the judge's action. [Citations.] Rather, we must determine whether the ruling of the judge, whatever its label, actually represents a resolution, correct or not, of some or all of the factual elements of the offense charged." (United States v. Martin Linen Supply Co. (1977) 430 U.S. 564, 571 [51 L.Ed.2d 642, 97 S.Ct. 1349], italics added.) Thus, a purported judgment of acquittal must be an acquittal "in substance as well as form."[9] (430 U.S. at p. 572.)
A characteristic application of these fundamental double jeopardy principles was presented in United States v. Scott (1978) 437 U.S. 82 [57 L.Ed.2d 65, 98 S.Ct. 2187]. The defendant had been indicted on three counts of distributing narcotics. Before trial, and then during trial, the defendant moved to dismiss two of the counts on the ground of preindictment delay. At the close of all the evidence, the trial court granted this motion. On appeal, the Sixth Circuit ruled the government's appeal from the trial court's ruling was barred by the double jeopardy clause. The Supreme Court reversed.
(4) Scott held the double jeopardy clause did not bar the government's appeal because the trial court's dismissal "was based upon a claim of preindictment delay and not on the court's conclusion that the Government had not produced sufficient evidence to establish the guilt of the defendant." (United States v. Scott, supra, 437 U.S. at p. 95.) "This is scarcely a picture of an all-powerful state relentlessly pursuing a defendant who had either been found not guilty or who had at least insisted on having the issue of guilt submitted to the first trier of fact. It is instead a picture of a defendant who chooses to avoid conviction and imprisonment, not because of his assertion that the Government has failed to make out a case against him, but because of a legal claim that the Government's case against him must fail even though it might satisfy the trier of fact that he was guilty beyond a reasonable doubt." (Id. at p. 96.) "[I]n a case such as this the defendant, by deliberately choosing to seek termination of the proceedings against him on a basis unrelated to factual guilt or innocence of the offense of which he is accused, suffers no injury cognizable under the Double Jeopardy Clause if the Government is *631 permitted to appeal from such a ruling of the trial court in favor of the defendant." (Id. at pp. 98-99.)

b. Sham trials do not trigger double jeopardy protection.

Commonwealth v. Gonzalez (2002) 437 Mass. 276 [771 N.E.2d 134], involved a situation very similar to the case at bar, except that the triggering event consisted of missing discovery rather than missing witnesses. In Gonzalez, the defendant had been charged with distributing heroin within 1,000 feet of a school. Pursuant to stipulation, the prosecutor was to provide the defense with two items of discovery: measurements of the school zone and a chemical analysis of the drug. The discovery compliance date on the pretrial conference report was listed as "5/22/00," after which was written "unagreed." On the day set for trial, the defendant moved to exclude all evidence regarding the school zone measurements and the drug analysis because discovery had not been made available on or before May 22. The prosecutor pointed out the compliance date had not been agreed on, but acknowledged the discovery had to be turned over. The prosecutor then offered to make the evidence available immediately.
The trial court rejected this offer and granted the defendant's motion to exclude the evidence. The trial court then asked if the prosecutor was ready for trial. The prosecutor said that, in light of the excluded evidence, the Commonwealth was not ready for trial. The court said the case was going forward. The defense waived a jury and, after the prosecutor said she could not proceed because the evidence had been excluded, the defense moved for a finding of not guilty. The prosecutor objected it would be more appropriate to dismiss the case for noncompliance with discovery. The trial court advised defense counsel to call a witness in order to avoid a dismissal without prejudice. Defense counsel called the defendant's daughter, who was sworn, stated her name and testified the defendant was her father. Defense counsel then indicated she had no further questions and moved for a finding of not guilty. The trial court granted the motion.
(5) Citing Serfass and Martin Linen Supply, the Massachusetts Supreme Judicial Court concluded Gonzalez had never been placed in jeopardy: "[B]efore according protection from double jeopardy based on an `acquittal,' or its functional equivalent, we are obligated to look beyond the judge's characterization of his action to determine the legal substance of the proceeding." (Commonwealth v. Gonzalez, supra, 771 N.E.2d at p. 140.) "[T]he judge announced that the proceeding constituted a trial `because I'm saying it is.' However, the judge's actions effectively ensured that there was no `trial' on `the facts and merits.' He first ... erroneously excluded the Commonwealth's evidence and deprived the prosecutor of the right to an appeal provided by *632 [Massachusetts law]. The judge then urged defense counsel (who obliged) to call a witness so that the judge could terminate the prosecution with an assurance that jeopardy had attached. The witness's testimony, identifying the defendant as her father, had no bearing on the defendant's guilt or innocence. The defendant was never in danger of conviction. Because there was no trial on the merits, and no risk of the defendant's conviction, jeopardy did not attach. [Citation.] The proceeding constituted an artifice designed to punish the Commonwealth, and it did not, in any realistic way, comport with the policy underlying the rule of double jeopardy." (Commonwealth v. Gonzalez, supra, 771 N.E.2d at p. 140, italics added.)
Gonzalez then went on to note: "One commentator[10] has aptly summed up the situation in these words: [¶] `The appellate courts should examine the trial procedures that disadvantaged the prosecution, to determine whether the defendant was indeed at risk of conviction. If the trial court structured a procedure that had a superficial appearance of placing the defendant in jeopardy but did not offer the prosecution a realistic opportunity to present its case, the court should treat the case as one in which jeopardy never attached. The appellate courts should allow the prosecution to pursue review of the trial court's rulings or further prosecution of the defendant. While trial judges should be permitted to protect defendants through rulings that are subject to appellate review, such as dismissal of the charges, they should not be permitted to manipulate trial procedure to defeat the public interests in an opportunity to pursue a conviction and in judicial accountability. A sham proceeding ... does not put the defendant to trial before the fact finder.'" (Commonwealth v. Gonzalez, supra, 771 N.E.2d at pp. 141-142.)
The Massachusetts Supreme Judicial Court's reasoning in Gonzalez was affirmed by Gonzalez v. Justices of Municipal Court (1st Cir. 2004) 382 F.3d 1, judgment vacated and cause remanded (2005) 544 U.S. 918 [161 L.Ed.2d 474, 125 S.Ct. 1640] (mem.), reaffirmed 420 F.3d 5, which upheld a federal district court's rejection of Gonzalez's subsequent habeas corpus petition. The First Circuit reasoned: "What transpired before the [Boston Municipal Court] hardly can be said to have imposed any risk of conviction on the petitioner. The chronology of the proceeding indicates beyond a shadow of a doubt that the risk of a guilty finding was, as a practical matter, non-existent.... [¶] That a witness was sworn and evidence taken during the effort to tailor the proceeding to the measurements of the double jeopardy bar does not alter the reality that the petitioner was never in actual danger of conviction." (382 F.3d at pp. 8-9.)
*633 Another example of a sham trial was People v. Deems (1980) 81 Ill.2d 384 [43 Ill.Dec. 8, 410 N.E.2d 8]. The defendant had been indicted for receiving stolen property. On the day set for trial, the state moved to dismiss the charge, conceding the defendant was not guilty of that crime, but indicating the defendant would be prosecuted for theft. "Despite the State's admission that the defendant did not commit the offense with which he was charged and its motion to dismiss, the defendant demanded an immediate trial on the original charge. The trial judge, likening the State's motion to a request for a continuance, decided that the defendant was entitled to go to trial if he was prepared to do so. The prosecutor reiterated the State's admission that the defendant did not commit the offense of receiving stolen property and pointed out that the court's refusal to dismiss the charge would force the State to prosecute a man who was concededly innocent. The judge indicated he would prefer to dismiss the case with prejudice for want of prosecution but could not do so because the appellate court had held that a trial judge did not have that power. [Citation.] He therefore decided to call the case for trial and acquit the defendant. The defendant accordingly waived jury trial, and neither party made an opening statement. When the trial judge called for the witnesses, only the defendant was sworn and he did not testify. The State indicated it had no witnesses to call. The court then found the defendant not guilty and entered its judgment acquitting him. A subsequent indictment for theft was dismissed on double jeopardy grounds. The State appealed, seeking reversal of both the acquittal and the dismissal, and the appellate court reversed both." (Id., 410 N.E.2d at pp. 9-10.)
Affirming the appellate court's decision, the Illinois Supreme Court rejected the defendant's claim the trial court's acquittal barred his prosecution for theft under double jeopardy principles. "While the judge denominated his action an `acquittal,' it bore none of those characteristics except the label. The proceedings were not an attempt by the State to convict defendant. The prosecutor was, in fact, doing his best to dismiss the charge against defendant on the ground that defendant was not guilty of the charged offense. Presumably the indictment would have been dismissed had defendant not persisted in demanding a trial." (People v. Deems, supra, 410 N.E.2d at p. 10.) "The interests protected by the double jeopardy clause simply are not threatened in this case. The traditional rule is that jeopardy attaches in a bench trial when the first witness is sworn and the court begins to hear evidence. [Citations.] That rule is predicated upon the fact that the first witness is normally an individual whose testimony is part of the State's case[,] a prosecution witness whose appearance is a part of the incriminating presentation jeopardizing defendant. Here, the only person sworn was the defendant himself, and he did not testify. No evidence of any type was introduced, and it is clear that defendant was at no time during these proceedings in danger of being found guilty of any offense." (Id. at p. 11.)
*634 Deems was followed by People v. Verstat (1983) 112 Ill.App.3d 90 [67 Ill.Dec. 691, 444 N.E.2d 1374], which involved the state's appeal from the acquittals of 11 defendants when prosecution requests for continuances, necessitated by witness unavailability, were denied. The trial courts in these cases, after denying the continuances, swore in the defendants, asked a few perfunctory questions and then declared them not guilty. Verstat held: "There were no trials. The State did not attempt to convict the defendants and, therefore, the `acquittals' amounted to dismissals which are appealable by the State .... [¶] While a double jeopardy argument is also advanced, we deem that contention under the facts here to have been sufficiently answered and rejected in ... Deems ...." (Id., 444 N.E.2d at p. 1380)

c. Because Graves faced only a sham trial, double jeopardy does not bar the People's appeal.

(6) As these cases make clear, double jeopardy protection is not triggered if the defendant has not faced an actual "risk of a determination of guilt" (Serfass v. United States, supra, 420 U.S. at p. 391) or if the trial court's ruling does not "actually represent[] a resolution, correct or not, of some or all of the factual elements of the offense charged" (United States v. Martin Linen Supply Co., supra, 430 U.S. at p. 571). (7) Here, a jury was sworn but no evidence reflecting on Graves's factual guilt or innocence was ever put before that jury. With the prosecutor refusing to participate because the crucial eyewitnesses were unavailable, the jurors heard nothing other than defense counsel's opening statement declaring they were going to be asked to convict Graves on the basis of no evidence whatsoever. Defense counsel then moved for a judgment of acquittal, which was granted. The protection against double jeopardy is intended to prevent "`the State with all its resources and power'" from making "`repeated attempts to convict an individual for an alleged offense.'" (Serfass v. United States, supra, 420 U.S. at p. 388.) But it is clear from the record here that the prosecution was never given the opportunity to try to convict Graves for the crimes he allegedly committed. Because Graves's trial was only a sham, the "judgment of acquittal" granted by the trial court carried no double jeopardy effect.
The appellate division held otherwise, however, saying: "[W]e conclude that the People are precluded by section 1118.2[11] from appealing the judgment of acquittal entered after the court granted defendant's section 1118.1 motion, and that an appeal is similarly not authorized under section *635 1466, subdivision (1)(B),[12] because jeopardy attached when the jury was empaneled and sworn." The appellate division reasoned: "When a court grants a motion for judgment of acquittal pursuant to section 1118.1 at the close of the People's case, the resulting judgment of acquittal is not appealable and double jeopardy bars further prosecution for the same offense."
But here there was no "People's case." The prosecution's case never "closed" because it never "opened." Section 1118.1 provides, in relevant part: "In a case tried before a jury, the court on motion of the defendant or on its own motion, at the close of the evidence on either side and before the case is submitted to the jury for decision, shall order the entry of a judgment of acquittal of one or more of the offenses charged in the accusatory pleading if the evidence then before the court is insufficient to sustain a conviction of such offense or offenses on appeal." (Italics added.) All of section 1118.1's key, italicized terms were missing here. There was no evidence presented; there was no actual trial.
(8) Section 1118.2 only bars an appeal from "[a] judgment of acquittal entered pursuant to the provisions of Section ... 1118.1." (Italics added.) Because section 1118.1 was not complied with, section 1118.2 did not bar the People's appeal. Correlatively, the People's appeal was allowable under section 1466, subdivision (1)(B), because it was, effectively, a prosecution appeal "[f]rom an order or judgment dismissing or otherwise terminating all or any portion of the action ... entered before the defendant has been placed in jeopardy ...."
Therefore, the appellate division erred when it dismissed the People's appeal without reaching the merits.

2. Trial court erred by denying the People's request to trial within the statutory period.

As we explain, although there is tension between the speedy trial statute (§ 1382)[13] and the statute governing the granting of continuances in criminal *636 cases (§ 1050),[14] our Supreme Court has made it clear the People are not required to show good cause in order to justify a continuance within the statutory period set forth in section 1382. An Advisory Committee comment to the Rules of Court, suggesting that unprepared prosecutors may be forced to trial, is inappropriate.

a. People's right to trial within the statutory period of section 1382.

(9) It is well established that a trial court cannot dismiss a case before the expiration of section 1382's statutory time within which to bring the defendant to trial, even if the People do not demonstrate good cause for a continuance.
This principle was set forth, in the context of the speedy trial statute's 10-day grace periods (§ 1382, subd. (a)(2)(B), (3)(B)),[15] by our Supreme Court in Malengo v. Municipal Court (1961) 56 Cal.2d 813 [17 Cal.Rptr. 10, 366 P.2d 453]. Malengo denied writ relief to a defendant claiming the trial court should have dismissed a misdemeanor case because he was not brought to trial within the time period required by section 1382. Malengo held the trial court did not err by allowing the People to trail the case to day seven of 10: "[T]he People moved for a continuance of one week only, and the motion was granted. No showing of good cause was necessary in support of this request to bring defendant to trial within ten days after the last date to which he had consented ... since the statute provides that the action `shall not be dismissed' if this is done." (Malengo v. Municipal Court, supra, at pp. 815-816, italics added, fn. omitted.)
Malengo has been relied on by a long line of decisions holding, in various situations, that the People are not required to show good cause in order to continue a case within either an initial statutory time period or a statutory grace period. (See, e.g., People v. Henderson (2004) 115 Cal.App.4th 922, 927 [9 Cal.Rptr.3d 655] [magistrate had no authority to dismiss complaint when prosecutor failed to show good cause under § 1050 to continue preliminary hearing because "the requested date falls within the statutory period required *637 for a preliminary hearing under section 859b"]; People v. Ferguson (1990) 218 Cal.App.3d 1173, 1183 [267 Cal.Rptr. 528] [trial court's dismissal of felony case, when prosecution was not ready for trial, reversed because 10-day grace period had not expired]; People v. Rubaum (1980) 110 Cal.App.3d 930, 935 [168 Cal.Rptr. 291] [trial court erred by dismissing misdemeanor case where prosecutor asked to trail within initial 45-day speedy trial period, but could not show good cause under § 1050: "Obviously a continuance date within the specified time limits should not render the case subject to dismissal if a continuance within the 10-day grace period does not do so."]; People v. Hernandez (1979) 97 Cal.App.3d 451, 454 [158 Cal.Rptr. 742] [reversing trial court's dismissal of felony case where prosecutor asked to trail within 10-day grace period because victim was unavailable: "trial court had no discretion to dismiss ... prior to the expiration of the statutory 10-day period" because "[n]o showing of good cause by the prosecution is necessary for a continuance to a date which is within the 10-day grace period"].)
Graves attacks the validity of Malengo and its progeny on a number of grounds, all of which are unpersuasive.

(1) Malengo rule is not dictum.

Graves asserts "Malengo has not been properly understood insofar as it is claimed that the Supreme Court has held that the prosecution is entitled to delay trials without good cause." Graves argues Malengo's statement, that no showing of good cause is necessary to justify a continuance within the 10-day grace period, is mere dictum: "Since the ruling in Malengo was that the defendant had waived his section 1382 rights by consenting to a delay beyond those time limits, the unnecessary comment regarding a delay within statutory time limits was mere obiter dicta ...."[16]
Graves has misconstrued the holding of the case. Malengo said it was addressing this question: Assuming good cause had not been shown to warrant continuing the trial to day seven of 10, was the trial court required to dismiss the case under section 1382? Malengo answered that question this way: "In the present case the People moved for a continuance of one week only, and the motion was granted. No showing of good cause was necessary in support of this request to bring defendant to trial within ten days after the last date to which he had consented ... since the statute provides that the *638 action `shall not be dismissed' if this is done. [¶] It follows that respondent court did not abuse its discretion in granting the People's motion for a one-week continuance." (Malengo v. Municipal Court, supra, 56 Cal.2d at pp. 815-816, fn. omitted.)
It was only after reaching this determination that Malengo went on to say: "The trial was in fact continued to February 3, 1961, almost one month later, but that date was chosen by counsel for defendant. [¶] There is no suggestion that defendant could not have appeared for trial within ten days after January 6, 1961, or even within the seven days requested by the People. Under such circumstances defendant cannot choose a later trial date and then complain that he was not brought to trial within the time prescribed by law. He must be deemed to have waived any objection to the continuance to the date thus chosen by him." (Malengo v. Municipal Court, supra, 56 Cal.2d at p. 816.)
Hence, if any part of Malengo is dictum, it is this last section, not the earlier section concluding the People did not have to demonstrate good cause to continue a case within the statutory period.
As recently as 2008, our Supreme Court restated this interpretation of section 1382: "In addition to enabling courts to ensure the availability of judicial resources, the 10-day grace period afforded by section 1382(a)(3)(B) serves the interests of both the prosecution and of the defendants because, while maintaining the defendant's right to speedy trial, it also `protects the People by giving them 10 days if necessary.' [Citations.] Implicitly recognizing the importance to the prosecution of having the full 10 days available to it, various decisions have concluded that a court should not enter a dismissal pursuant to section 1382 for prosecutorial delay within the 10 days even in the absence of a showing of good cause for delay. [Citations.] [¶] Accordingly,... a defense objection concerning a prosecutor's request to trail within the 10-day period would `serve[] no pragmatic function.' [Citation.] ... `In effect, the 10-day grace period, by precluding any effective defense objection, effects the consent of the defendant to be brought to trial at any time within the 10-day period.'" (Barsamyan v. Appellate Division of Superior Court (2008) 44 Cal.4th 960, 978-979 [81 Cal.Rptr.3d 265, 189 P.3d 271], some italics added.) A fortiori, the same principles must apply to the initial statutory time periods established by section 1382, such as the 30-day limit for bringing Graves to trial (§ 1382, subd. (a)(3)).
Graves's attempt to conjure away Malengo's holding is to no avail.

*639 (2) Section 1050 does not trump section 1382.

Alternatively, Graves asserts Malengo does not help the People because it had nothing to say about the interface between sections 1382 and 1050, and section 1050 provides authority for dismissing cases within section 1382's statutory period.
Section 1050, which governs the granting of continuances in all phases of criminal prosecutions, provides: "Continuances shall be granted only upon a showing of good cause. Neither the convenience of the parties nor a stipulation of the parties is in and of itself good cause." (§ 1050, subd. (e).) Graves argues: "Of course, under section 1382, the only time when good cause becomes an issue, and the only time when dismissal is available, is when the statutory time limits have been exceeded. Accordingly, no showing of good cause is necessary to avoid dismissal under section 1382 if the defendant moves to dismiss before the time limits provided by section 1382 have expired. This is the correct construction of the Malengo comment, which did not refer to section 1050 at all, and in no manner purported to construe that statute." (Italics omitted.)
Graves is thus claiming that, regardless of whether section 1382 would allow dismissal within the statutory period, section 1050about which Malengo had nothing to saydoes allow for such a dismissal.
(10) However, although the "Malengo comment" did not itself refer to section 1050, the second of the two issues addressed by Malengo was, in fact, the effect of section 1050 on the trial court's power to dismiss within the statutory period. That is, after holding the trial court did not err by granting, during the grace period, a continuance request unsupported by good cause, Malengo addressed the effect of section 1050: "Defendant argues that [section 1050] is mandatory and therefore that since there was an absence of proof in open court that the ends of justice required a continuance, respondent court lost jurisdiction to proceed with the trial of the case. [¶] This contention is devoid of merit, for the reason that section 1050 ... is directory only and contains no provision for the dismissal of a case when its terms are not complied with." (Malengo v. Municipal Court, supra, 56 Cal.2d at p. 816, italics added.)
Graves asserts, "It certainly could not have been the intention of the Malengo court to require unjustified continuance motions to be granted, and to render Penal Code section 1050 a nullity, simply because dismissal was not required if the time limits of section 1382 were not violated." But Malengo did not render section 1050 a nullity; it merely carved out a limited pretrial exception to the general rule that all continuances in criminal cases must be justified by a showing of good cause.
*640 The key to understanding the interface between sections 1382 and 1050 is that section 1050 does not confer on a trial court the power to enforce its denial of a continuance by dismissing the case. "Nothing in sections 1050 and 1050.5[17] authorizes the trial court to dismiss a case after denying a motion for continuance. Section 1050 is not mandatory, but `directory only and contains no provision for the dismissal of a case when its terms are not complied with.'" (People v. Henderson, supra, 115 Cal.App.4th 922, 934, fn. omitted [quoting Malengo].)
"In 2003, the State Legislature enacted a new law, Assembly Bill No. 1273, amending sections 1050 and 1050.5. Assembly Bill No. 1273 added subdivision (l) to section 1050. The new provision states: `This section is directory only and does not mandate dismissal of an action by its terms.' Assembly Bill No. 1273 also changed section 1050.5, subdivision (b) by adding certain language, as underscored in the following: `The authority to impose sanctions provided for by this section shall be in addition to any other authority or power available to the court, except that the court or magistrate shall not dismiss the case.'
"The bill analysis for the Senate Committee on Public Safety hearing included, under the heading, `Codification of Case Law,' the following comments: `Penal Code section 1050 allows for the continuance of a criminal proceeding upon a showing of good cause. According to the sponsor, courts have apparently dismissed cases after the prosecutor has failed to establish good cause to continue the trial of the matter even though it was still within the 60-day statutory speedy trial period. In People v. Ferguson (1990) 218 Cal.App.3d 1173 [267 Cal.Rptr. 528], the Court of Appeal stated, "Section 1050 governs continuance and is based on the premise that criminal proceedings shall be set for trial and be heard and determined at the earliest possible time. Section 1050 is directory only and does not mandate any dismissal of *641 an action by its terms." This bill codifies this principle. Thus, under this bill a case could not be dismissed as a sanction for failing to comply with the rules governing continuances if the statutory time for a speedy trial has not run.' The legislative materials again clearly state that Assembly Bill No. 1273 `codifies existing case law which provides that the courts may not dismiss a case due to a failure to meet the good cause requirements for a continuance, before the expiration of the 60-day statutory limit.'" (People v. Henderson, supra, 115 Cal.App.4th at p. 935, italics added, fns. omitted.)
Henderson went on to apply the reasoning of the section 1382 speedy trial cases to section 859b, the statute requiring a timely preliminary hearing: "[B]oth sections 1382 and 859b establish statutory limits to safeguard a defendant's constitutional right to a speedy trial. As has been said about the statutory limits in section 1382, the statutory periods established in section 859b indicate a legislative policy that such periods constitute a reasonable time. In the speedy trial cases, the courts have held that a criminal case, based on society's legitimate interest in prosecuting crimes, should not be subject to dismissal where the People have asked to continue the case to a date within the statutory period. We see no reason to limit this holding to the speedy trial cases. We conclude that the trial court has no authority to dismiss an action, even when the People have failed to show good cause for a continuance under section 1050, so long as the requested date for the preliminary hearing is within the statutory time limit established in section 859b." (People v. Henderson, supra, 115 Cal.App.4th at p. 939, fns. omitted.)
Immediately following this analysis, Henderson said: "We are mindful that this conclusion may place courts in a difficult situation where, after finding no good cause to justify a continuance, they are compelled to deny the continuance under section 1050, but cannot dismiss the case when the prosecutor is not ready to proceed." (People v. Henderson, supra, 115 Cal.App.4th at p. 939.)
Hence, both case law and the legislative intent behind the most recent amendment to section 1050 demonstrate that section 1050 does not trump section 1382.

(3) Rule of Court 4.113.

Finally, Graves argues rules 4.113 and 4.115(b) of the California Rules of Court demonstrate that, because all motions to continue must be justified by a showing of good cause, the trial court here properly denied the People's continuance request and forced the case to trial.
Rule 4.113 of the California Rules of Court provides, "Motions to continue the trial of a criminal case are disfavored and will be denied unless the *642 moving party, under Penal Code section 1050, presents affirmative proof in open court that the ends of justice require a continuance."
Rule 4.115(b) of the California Rules of Court provides: "Any request for a continuance, including a request to trail the trial date, must comply with rule 4.113 and the requirement in section 1050 to show good cause to continue a hearing in a criminal proceeding. Active management of trial calendars is necessary to minimize the number of statutory dismissals. Accordingly, courts should avoid calendaring or trailing criminal cases for trial to the last day permitted for trial under section 1382. Courts must implement calendar management procedures, in accordance with local conditions and needs, to ensure that criminal cases are assigned to trial departments before the last day permitted for trial under section 1382." (Italics added.)
Rule 4.115(b) of the California Rules of Court was added by an amendment effective on January 1, 2008. The Advisory Committee comment to this rule states:
(11) "Subdivision (b) clarifies that the `good cause' showing for a continuance under section 1050 applies in all criminal cases, whether or not the case is in the 10-day grace period provided for in section 1382. The Trial Court Presiding Judges Advisory Committee and Criminal Law Advisory Committee observe that the `good cause' requirement for a continuance is separate and distinct from the `good cause' requirement to avoid dismissals under section 1382. There is case law stating that the prosecution is not required to show good cause to avoid a dismissal under section 1382 during the 10-day grace period because a case may not be dismissed for delay during that 10-day period. [Citation.] Yet, both the plain language of section 1050 and case law show that there must be good cause for a continuance under section 1050 during the 10-day grace period. (See, e.g., section 1050 and People v. Henderson (2004) 115 Cal.App.4th 922, 939-940 [9 Cal.Rptr.3d 655].) Thus, a court may not dismiss a case during the 10-day grace period under section 1382, but the committees believe that the court must deny a request for a continuance during the 10-day grace period that does not comply with the good cause requirement under section 1050.
"The decision in Henderson states that when the prosecutor seeks a continuance but fails to show good cause under section 1050, the trial court `must nevertheless postpone the hearing to another date within the statutory period.' [Citation.] That conclusion, however, may be contrary to the plain language of section 1050, which requires a court to deny a continuance if the moving party fails to show good cause. The conclusion also appears to be dicta, as it was not a contested issue on appeal. Given this uncertainty, the rule is silent as to the remedy for failure to show good cause for a requested *643 continuance during the 10-day grace period. The committees note that the remedies under section 1050.5 are available and, but for the Henderson dicta, a court would appear to be allowed to deny the continuance request and commence the trial on the scheduled trial date." (Cal. Rules of Court, rule 4.115, Advisory Com. com., italics added.)
Citing the final paragraph of the Advisory Committee comment, Graves argues, "Since, obviously, dicta is not binding, the result is the Advisory Committees' approval of precisely what occurred in this case: denial of an unjustified motion to continue and commencement of trial."

b. Graves's several arguments are unpersuasive.

We are unpersuaded by Graves's argument for several reasons. We cannot agree with the Advisory Committee's attempt to discount Henderson's conclusion that, faced with a prosecutor's no-good-cause continuance request, the trial court must postpone the hearing to another date within the statutory period. While this portion of Henderson may have been technically dictum,[18] it was certainly a logical correlate of Henderson's holding, i.e., that the magistrate had no power to dismiss the case so long as the requested continuance date was within the statutory period.
Furthermore, the Advisory Committee's suggestion that it would be proper for a trial court to deny the no-good-cause continuance request and commence trial on the scheduled date, directly contradicts the legislative history of section 1050's most recent amendment in 2003. The bill analysis from the Senate Committee on Public Safety specifically addressed the need to resolve this tension between section 1050 and section 1382:
"According to the author:[19]
"`Assembly Bill 1273 is an attempt to end the confusion when a court may dismiss a case within the statutory speedy trial period.
"`Current law (Penal Code Section 1382) provides the People and the defendant with a right to a speedy trial, but that right is balanced against the right of both parties to have at least 60 days to prepare their case.
"`The problem AB 1273 attempts to resolve involves situations when a court seeks to dismiss a case before the expiration of the statutory 60 day time limit.
*644 "`The confusion involves an apparent conflict between two Penal Code sections. Penal Code Section 1050 relates to a request by either the prosecution or defense to trail a criminal case within the 60 day statutory time limit. In order to trail a case within the 60 day statutory time limit the prosecution or defense must provide written notice to the court and opposing counsel of their request to trail the case and the moving party must show good cause for their request to trail the case. Penal Code Section 1382 on the other hand provides both the prosecution and defense with a right not to be forced to go to trial within a 60 day statutory time limit. Therefore, one section (Penal Code Section 1050) requires a showing of good cause to trail a case within the 60 day statutory period and the other section (Penal Code Section 1382) does not require a showing of good cause within the 60 day period.
"This conflict has resulted in District Attorney offices frequently being forced to begin trials before the expiration of the statutory time period even though we have provided a legitimate prosecutorial reason why we are not ready on that day, but will [be] ready on a day within the statutory time provided by law. In other cases we have been forced to dismiss and re-file a case prior to the expiration of the 60 day statutory time period to avoid having the case sent out to trial before the case is ready to be prosecuted.'" (Sen. Com. on Public Safety, Analysis of Assem. Bill No. 1273 (2003-2004 Reg. Sess.) as amended May 1, 2003, pp. 4-5, italics added.)
(12) There is clearly tension between section 1050 and section 1382, and just as clearly the Legislature intended, by its amendments to sections 1050 and 1050.5 in 2003, to resolve that tension in favor of section 1382. Rule 4.115 of the California Rules of Court, which expressly applies section 1050 to requests to continue cases during the trailing period, and more pointedly the Advisory Committee's suggestion that unprepared prosecutors be forced to trial, present an unwarranted, though ineffective,[20] threat to the Legislature's solution.
(13) Forcing an unprepared prosecutor to trial violates the legislative intent behind both section 1382 and section 1050, which is to allow the People all of the statutory time period, if needed, to prepare for trial. As amicus curiae, the Office of the Los Angeles City Attorney, argues: "Section 1050 and the Rules of Court cannot be read to circumvent section 1382's statutory protections granted to the People.... [¶] Indeed, to apply section 1050 and the Rules of Court without regard for section 1382 violated not only the prosecution's statutory right, but also deprived the prosecution of its *645 constitutional right to due process of law. Article I, section 29, of the California Constitution expressly guarantees that `[i]n a criminal case the people of the state of California have the right to due process of law and to a speedy and public trial.' `[T]he central meaning of procedural due process is that the parties whose rights are to be affected are entitled to be heard at a meaningful time and in a meaningful manner.' [Citation.][21] As the record demonstrates, the prosecution received neither a meaningful time nor a meaningful manner in which to be heard on the merits of its charges against [Graves]."
Hence, we conclude the trial court erred by dismissing the misdemeanor complaint against Graves and awarding him a judgment of acquittal, even if the People failed to show good cause for a continuance within the statutory period.

CONCLUSION
We appreciate the difficulties faced by trial courts when confronting the tensions and ambiguities created by the various statutes and court rules addressed in this opinion. Certainly parties of good faith can be pulled in different directions when interpreting the rules governing the granting of continuances in criminal cases, particularly given trial courts' legitimate concern about moving criminal calendars along in a timely manner.
In section 1050, subdivision (a), the Legislature has acknowledged its own concern with trial court congestion by saying: "The welfare of the people of the State of California requires that all proceedings in criminal cases shall be set for trial and heard and determined at the earliest possible time. To this end, the Legislature finds that the criminal courts are becoming increasingly congested with resulting adverse consequences to the welfare of the people and the defendant. Excessive continuances contribute substantially to this congestion and cause substantial hardship to victims and other witnesses. Continuances also lead to longer periods of presentence confinement for those defendants in custody and the concomitant overcrowding and increased expenses of local jails. It is therefore recognized that the people, the defendant, and the victims and other witnesses have the right to an expeditious disposition, and to that end it shall be the duty of all courts and judicial *646 officers and of all counsel, both for the prosecution and the defense, to expedite these proceedings to the greatest degree that is consistent with the ends of justice."
(14) However, the Legislature has also made clear its intention that, despite the need to alleviate the adverse consequences of trial court congestion, the prosecution is entitled to use the entire statutory period provided for by section 1382 to prepare a case for trial. This legislative intent must take precedence over any rule of court, or Advisory Committee comment, to the extent it is interpreted to impinge on the prosecution's right to fully use that time.
In this opinion we have endeavored, by analyzing the relevant statutes and legislative intent, to clarify ambiguities that have existed in this area of the law for decades. It is hoped we have accomplished our purpose.

DISPOSITION
We reverse the trial court's order dismissing this case. We remand the case to allow the trial court to reinstate the misdemeanor complaint and reschedule the trial.
Croskey, J., and Kitching, J., concurred.
NOTES
[1] All further statutory references are to the Penal Code unless otherwise specified.
[2] On November 17, 2009, we filed the following order: "Having reviewed the memorandum judgment of the Appellate Division ... and the People's petition for transfer, we determined that transfer to this court is necessary to secure uniformity of decision and to settle important questions of law. [¶] IT IS ORDERED that the case is transferred to this court for hearing and decision pursuant to rules 8.1002 and 8.1008 of the California Rules of Court."
[3] As represented to the trial court by defense counsel, who referred to "the security tape from the store where the event took place ...."
[4] All further calendar references are to the year 2008 unless otherwise specified.
[5] Section 1382, subdivision (a), provides, "unless good cause to the contrary is shown," a misdemeanor prosecution must be dismissed if the defendant "is not brought to trial within 30 days after he or she is arraigned or enters his or her plea, whichever occurs later, if the defendant is in custody at the time of arraignment or plea ...." (§ 1382, subd. (a)(3).)
[6] Section 1118.1 provides, in pertinent part: "In a case tried before a jury, the court on motion of the defendant or on its own motion, at the close of the evidence on either side and before the case is submitted to the jury for decision, shall order the entry of a judgment of acquittal of one or more of the offenses charged in the accusatory pleading if the evidence then before the court is insufficient to sustain a conviction of such offense or offenses on appeal."
[7] That determination had been made by Judge Cho in department 140.
[8] The People also claimed the trial court erroneously denied their request to trail within the statutory period because they demonstrated good cause for a continuance, inasmuch as the witnesses had been ordered to appear by the trial court. Given our disposition of the People's other contentions, however, we do not reach this claim.
[9] The ruling in Martin Linen Supply was a true acquittal: "There can be no question that the judgments of acquittal entered here by the District Court were `acquittals' in substance as well as form. The District Court plainly granted the Rule 29(c) motion on the view that the Government had not proved facts constituting criminal contempt. The court made only too clear its belief that the prosecution was `"the weakest [contempt case that] I've ever seen."' [Citation.]" (United States v. Martin Linen Supply Co., supra, 430 U.S. at pp. 571-572, fn. omitted.)
[10] Poulin, Double Jeopardy and Judicial Accountability: When is an Acquittal Not an Acquittal? (1995) 27 Ariz. St. L.J. 953, 969.
[11] Section 1118.2 provides: "A judgment of acquittal entered pursuant to the provisions of Section 1118 or 1118.1 shall not be appealable and is a bar to any other prosecution for the same offense."
[12] Section 1466, provides: "An appeal may be taken from a judgment or order, in an infraction or misdemeanor case, to the appellate division of the superior court ... in the following cases: [¶] (1) By the people: [¶] ... [¶] (B) From an order or judgment dismissing or otherwise terminating all or any portion of the action, including such an order or judgment, entered after a verdict or finding of guilty or a verdict or judgment entered before the defendant has been placed in jeopardy or where the defendant has waived jeopardy."
[13] In general, section 1382 provides that, "unless good cause to the contrary is shown" the trial court "shall order the action to be dismissed" if defendants in felony and misdemeanor cases are not brought to trial within specified time periods (id., subd. (a)).
[14] Section 1050, subdivision (e), provides that "[c]ontinuances shall be granted only upon a showing of good cause."
[15] Section 1382 contains two 10-day grace periods. For felony cases, subdivision (a)(2)(B) provides that when, without a general waiver, the defendant consents to a trial date beyond the initial 60-day period for bringing felony cases to trial, "the defendant shall be brought to trial on the date set for trial or within 10 days thereafter." (Italics added.) For misdemeanor cases, subdivision (a)(3)(B) provides that when, without a general waiver, the defendant consents to a trial date beyond the initial 30-day (where the defendant was arraigned while in custody) or 45-day (where the defendant was arraigned while out of custody) period "the defendant shall be brought to trial on the date set for trial or within 10 days thereafter." (Italics added.)
[16] Graves asserts Malengo "held that since there had been no showing that the defendant could not have appeared for trial within the 10-day period, `He must be deemed to have waived any objection to the continuance date thus chosen by him.' However, in passing, the court also said regarding the People's requested continuance: `No showing of good cause was necessary in support of this request to bring defendant to trial within ten days after the last date to which he had consented ....'" (Italics added.)
[17] Section 1050, subdivision (b), provides in pertinent part: "To continue any hearing in a criminal proceeding, including the trial, (1) a written notice shall be filed and served on all parties to the proceeding at least two court days before the hearing sought to be continued, together with affidavits or declarations detailing specific facts showing that a continuance is necessary ...." Subdivision (c) of section 1050 provides: "Notwithstanding subdivision (b), a party may make a motion for a continuance without complying with the requirements of that subdivision. However, unless the moving party shows good cause for the failure to comply with those requirements, the court may impose sanctions as provided in Section 1050.5."

Section 1050.5 provides: "(a) When, pursuant to subdivision (c) of Section 1050, the court imposes sanctions for failure to comply with the provisions of subdivision (b) of Section 1050, the court may impose one or both of the following sanctions when the moving party is the prosecuting or defense attorney: [¶] (1) A fine not exceeding one thousand dollars ($1,000) upon counsel for the moving party. [¶] (2) The filing of a report with an appropriate disciplinary committee. [¶] (b) The authority to impose sanctions provided for by this section shall be in addition to any other authority or power available to the court, except that the court or magistrate shall not dismiss the case."
[18] The issue of postponing the hearing to another date within the statutory period did not factually arise because, rather than pick an alternative preliminary hearing date within the statutory period, the magistrate simply dismissed the case.
[19] The author of Assembly Bill No. 1273 (2003-2004 Reg. Sess.) was Assemblymember Alan Nakanishi.
[20] Ineffective because the Judicial Council may not adopt rules that conflict with governing statutes (Hess v. Ford Motor Co. (2002) 27 Cal.4th 516, 532 [117 Cal.Rptr.2d 220, 41 P.3d 46]) or legislative intent (In re Robin M. (1978) 21 Cal.3d 337, 346 [146 Cal.Rptr. 352, 579 P.2d 1]).
[21] "For more than a century the central meaning of procedural due process has been clear: `Parties whose rights are to be affected are entitled to be heard; and in order that they may enjoy that right they must first be notified.' [Citations.] It is equally fundamental that the right to notice and an opportunity to be heard `must be granted at a meaningful time and in a meaningful manner.' [Citation.]" (Fuentes v. Shevin (1972) 407 U.S. 67, 80 [32 L.Ed.2d 556, 92 S.Ct. 1983].)