**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 13-2190**

UNITED STATES OF AMERICA,

Intervenor/Plaintiff – Appellant,

and

UNITED STATES ex rel. OMAR BADR,

Plaintiff,

v.

TRIPLE CANOPY, INC.,

Defendant – Appellee.

**No. 13-2191**

UNITED STATES ex rel. OMAR BADR,

Plaintiff – Appellant,

v.

TRIPLE CANOPY, INC.,

Defendant – Appellee.

On Remand from the Supreme Court of the United States.
(S. Ct. No. 14-1440)

Argued: January 26, 2017                    Decided: May 16, 2017

Before SHEDD, AGEE, and WYNN, Circuit Judges.

Affirmed in part, reversed in part, and remanded by published opinion. Judge Shedd wrote the opinion, in which Judge Agee and Judge Wynn joined.

**ARGUED:** Charles W. Scarborough, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C.; Earl N. Mayfield, III, DAY & JOHNS, PLLC, Fairfax, Virginia, for Appellants. Tara Melissa Lee, QUINN EMANUEL URQUHART & SULLIVAN, LLP, Washington, D.C., for Appellee. **ON BRIEF:** Benjamin C. Mizer, Principal Deputy Assistant Attorney General, Joyce R. Branda, Acting Assistant Attorney General, Stuart F. Delery, Assistant Attorney General, Michael S. Raab, Civil Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C.; Dana J. Boente, United States Attorney, Richard W. Sponseller, Peter S. Hyun, Gerard Mene, Christine Roushdy, Assistant United States Attorneys, OFFICE OF THE UNITED STATES ATTORNEY, Alexandria, Virginia, for Appellant United States of America. Paul A. Prados, Milt C. Johns, Christopher M. Day, DAY & JOHNS, PLLC, Fairfax, Virginia, for Appellant Omar Badr. Joseph C. Davis, Reston, Virginia; Paul D. Schmitt, DLA PIPER LLP (US), Washington, D.C.; Jonathan G. Cooper, QUINN EMANUEL URQUHART & SULLIVAN, LLP, Washington, D.C., for Appellee.

SHEDD, Circuit Judge:

On remand from the United States Supreme Court, we are asked to consider whether the Government stated a claim under the False Claims Act (FCA), 31 U.S.C. § 3729(a) against Triple Canopy, Inc. Applying *Universal Health Services, Inc. v. United States ex rel. Escobar*, 136 S.Ct. 1989 (2016), we conclude that the Government properly alleged an FCA claim.

I.

The facts and procedural history are recounted in detail in our earlier opinion. *See United States ex rel. Badr v. Triple Canopy, Inc.*, 775 F.3d 628, 632-33 (4th Cir. 2015). In brief, the Government awarded Triple Canopy a one-year contract to provide security services at Al Asad Airbase in Iraq. As part of that contract, Triple Canopy was required to meet certain "responsibilities," including "ensur[ing] that all employees have . . . qualified on a U.S. Army qualification course." (J.A. 99). According to the relator, Omar Badr, Triple Canopy brought in guards from Uganda who were unable to meet this marksmanship requirement. Rather than inform the Government of this deficiency, Triple Canopy falsified the scorecards on several occasions throughout the year. Triple Canopy submitted invoices for its guards on a monthly basis but was not required to certify that its guard services complied with the contract's responsibilities.

Badr brought an action against Triple Canopy under 31 U.S.C. §§ 3729 & 3730. The Government intervened and filed a two-count complaint, alleging, *inter alia*, that Triple Canopy knowingly presented false claims, in violation of 31 U.S.C. § 3729(a)(1)(A) because it "billed the Government for the full price for each and every one

3

of its unqualified security guards." (J.A. 24). The district court granted Triple Canopy's motion to dismiss. *United States ex rel. Badr v. Triple Canopy, Inc.*, 950 F.Supp.2d 888 (E.D. Va. 2013). In doing so, the court "decline[d] recognition of an implied certification theory of liability." [1] *Id.* at 899.

We reversed in relevant part, concluding that the implied certification theory was valid in certain circumstances: "we hold that the Government pleads a false claim when it alleges that the contractor, with the requisite scienter, made a request for payment under a contract and withheld information about its noncompliance with material contractual requirements." 775 F.3d at 636 (internal quotation marks omitted). To guard against the potential for abuse, we required "strict enforcement of the Act's materiality and scienter requirements." *Id.* at 637 (internal quotation marks omitted).

Applying this standard, we found that the Government successfully stated a claim because it alleged that Triple Canopy made a material falsehood. On falsity, we explained that the marksmanship requirement was a contractual responsibility that Triple Canopy failed to satisfy, instead undertaking "a fraudulent scheme . . . to obscure its failure." *Id.* We also rejected Triple Canopy's argument that implied representations could only give

---

[1] As the Court defined the theory in *Universal Health:*

[W]hen a defendant submits a claim, it impliedly certifies compliance with all conditions of payment. But if that claim fails to disclose the defendant's violation of a material statutory, regulatory, or contractual requirement, so the theory goes, the defendant has made a misrepresentation that renders the claim "false or fraudulent."

*Universal Health*, 136 S.Ct. at 1995 (quoting U.S.C. § 3729(a)(1)(A)).

4

rise to liability if payment was conditioned on compliance with the requirement because "nothing in the statute's language specifically requires such a rule." *Id.* at 637 n. 5 (internal quotation marks omitted). We also found that the Government properly pled materiality:

> [C]ommon sense strongly suggests that the Government's decision to pay a contractor for providing base security in an active combat zone would be influenced by knowledge that the guards could not, for lack of a better term, shoot straight.

*Id.* at 637-38. We noted that Triple Canopy's own elaborate cover-up suggested that the contractor realized the materiality of the marksmanship requirement.

After issuing our decision, the Supreme Court granted certiorari in *Universal Health* to resolve a circuit split on whether and to what extent the implied certification theory is valid under the FCA. The Court first held that "at least in certain circumstances," the theory "can be a basis for liability." *Universal Health,* 136 S.Ct. at 1995. Thus, a contractor can be liable under the FCA "when [it] submits a claim for payment that makes specific representations about the goods or services provided, but knowingly fails to disclose the defendant's noncompliance with a statutory, regulatory, or contractual requirement." *Id*. In addition, the Court held that liability "does not turn upon whether those requirements were expressly designated as conditions of payment" because "[w]hat matters is not the label the Government attaches to a requirement, but whether the defendant knowingly violated a requirement that the defendant knows is material to the Government's payment decision." *Id.* at 1996. Abuse of the theory, the Court cautioned, should be cabined by the "rigorous materiality requirement." *Id.*

The Court next fleshed out how to apply the "demanding" materiality standard. *Id.* at 2003. As the Court summarized:

> A misrepresentation cannot be deemed material merely because the Government designates compliance with a particular statutory, regulatory, or contractual requirement as a condition of payment. Nor is it sufficient for a finding of materiality that the Government would have the option to decline to pay if it knew of the defendant's noncompliance. Materiality, in addition, cannot be found where noncompliance is minor or insubstantial.

*Id.*

In so ruling, the Court rejected the Government's more expansive argument that a misrepresentation was material so long as the contractor knew that the Government would be entitled to refuse payment. The Court referred to the Government's hypothetical wherein a contractor provides health services but violates a requirement that all contractors must use American-made staplers. "The False Claims Act," the Court emphasized, "does not adopt such an extraordinarily expansive view of liability." *Id.* at 2004. Instead, the Court suggested that proof of materiality could include "evidence that the defendant knows that the Government consistently refuses to pay claims in the mine run of cases based on [similar] noncompliance." *Id.* at 2003.

After issuing its decision in *Universal Health*, the Court granted certiorari in our case, vacated our earlier opinion, and remanded the case for further consideration. *Triple Canopy, Inc. v. United States ex rel. Badr*, 136 S.Ct. 2504 (2016). On remand, we ordered the parties to brief and argue the impact of *Universal Health* on our earlier panel decision.

II.

6

Our task is straightforward: we must determine whether *Universal Health* alters our earlier conclusion that the Government stated a claim under § 3729(a)(1)(A).[2] The fact that the Supreme Court vacated our earlier opinion does not impact our ultimate conclusion; that action is not a decision on the merits, and we remain free to "enter the same judgment." *Vazquez-Valentin v. Santiago-Diaz*, 459 F.3d 144, 148 (1st Cir. 2006). Applying *Universal Health*, we readily conclude that it does not alter our earlier panel decision and, accordingly, we again reverse the district court's dismissal of the Government's complaint and remand for further proceedings.

*Universal Health* made two rulings relevant here. First, the Court held (as we did in our earlier panel decision) that the implied certification theory of liability is valid in certain circumstances. Second, the Court counseled that concerns about abuse of the theory should be addressed by employing a rigorous materiality requirement. Triple Canopy argues that, under *Universal Health*, the Government's complaint falls short of alleging both falsity and materiality. We disagree.

Regarding falsity, Triple Canopy argues that *Universal Health* adopted a much narrower view of falsity than we did and that, applying the Court's test, the Government failed to state a claim. *Universal Health* requires the Government to show that a contractor "makes specific representations about the goods or services provided, but

---

[2] Nothing in *Universal Health* affects our conclusion that the Government properly pled a false records claim under § 3729(a)(1)(B) or that Badr failed to state a claim regarding his allegations that Triple Canopy operated a similar scheme at several others bases in Iraq. Accordingly, we reinstate Parts IV and V of our earlier panel opinion.

knowingly fails to disclose the defendant's noncompliance with a statutory, regulatory, or contractual requirement." *Universal Health*, 136 S.Ct. at 1995. Triple Canopy contends that, in *Universal Health*, that standard was satisfied because when the contractor billed Medicare, it chose specific billing codes for services, thus making a "specific representation" about the services provided. Here, in contrast, Triple Canopy argues that it merely submitted invoices listing the number of guards and hours worked and these invoices contained no falsities on their face.

We conclude that the Government has sufficiently alleged falsity. Simply, the *Universal Health* rule is not as crabbed as Triple Canopy posits. In announcing the rule, the Court made clear that it was targeting omissions that "fall squarely within the rule that half-truths—representations that state the truth only so far as it goes, while omitting critical qualifying information—can be actionable misrepresentations." *Id.* at 2000. That "half-truth" is exactly what we have here: although Triple Canopy knew its "guards" had failed to meet a responsibility in the contract, it nonetheless requested payment each month from the Government for those "guards." Just as in *Universal Health*, anyone reviewing Triple Canopy's invoices "would probably—but wrongly—conclude that [Triple Canopy] had complied with core [contract] requirements." *Id.*[3]

---

[3] Moreover, to the extent *Universal Health* left open the question of whether "all claims for payment implicitly represent that the billing party is legally entitled to payment," 136 S.Ct. at 2000, we already answered that question in our earlier decision, holding that the Government pleads a false claim when it alleges a "request for payment under a contract" where the contractor "withheld information about its noncompliance with material contractual requirements." *Triple Canopy*, 775 F.3d at 636 (internal quotation marks omitted).

We also conclude that nothing in *Universal Health* undermines our earlier conclusion that Triple Canopy's falsity was material. In fact, far from undermining our conclusion, *Universal Health* compels it.[4] In analyzing materiality, we noted that a material falsehood was one that was capable of influencing the Government's decision to pay. We explained that the standard was a high one intended to keep FCA liability from attaching to "noncompliance with any of potentially hundreds of legal requirements" in a contract. *Triple Canopy*, 775 F.3d at 637 (internal quotation marks omitted). Applying the standard, we found Triple Canopy's omissions material for two reasons: common sense and Triple Canopy's own actions in covering up the noncompliance. That conclusion perfectly aligns with *Universal Health*. Most persuasively, in discussing scienter, the Court offered the following hypothetical:

> A defendant can have "actual knowledge" that a condition is material without the Government expressly calling it a condition of payment. If the Government failed to specify that guns it orders must actually shoot, but the defendant knows that the Government routinely rescinds contracts if the guns do not shoot, the defendant has "actual knowledge." Likewise, because a reasonable person would realize the imperative of a functioning firearm, a defendant's failure to appreciate the materiality of that condition would amount to "deliberate ignorance" or "reckless disregard" of the "truth or falsity of the information" even if the Government did not spell this out.

---

[4] If anything, we took a narrower view of materiality than the Court. In a footnote, we stated that, although a contract provision need not expressly be identified as a condition of payment to be material, as a practical matter it would be difficult for the Government to prove materiality absent a showing that the provision was a precondition for payment. *See Triple Canopy*, 775 F.3d at 637 n5. However, in *Universal Health*, the Court held that "the Government's decision to expressly identify a provision as a condition of payment is relevant, but not automatically dispositive." *Universal Health*, 136 S.Ct. at 2003.

*Universal Health*, 136 S.Ct. at 2001-02. Guns that do not shoot are as material to the Government's decision to pay as guards that cannot shoot straight.

In addition, in discussing the types of evidence the Government could introduce to show materiality, the Court referenced whether the Government typically paid claims that violated the particular requirement. Here, the Government did not renew its contract for base security with Triple Canopy and immediately intervened in the litigation. Both of these actions are evidence that Triple Canopy's falsehood affected the Government's decision to pay. As we explained, the "Government's decision to pay a contractor for providing base security in an active combat zone would be influenced by knowledge that the guards could not, for lack of a better term, shoot straight." *Triple Canopy,* 775 F.3d at 638.

In sum, nothing contradicts our conclusion that the Government properly alleged that Triple Canopy violated the FCA.

### III.

Having reconsidered our earlier panel decision in light of *Universal Health,* we conclude that the Government has stated a claim under § 3729(a)(1)(A) of the FCA. We also reinstate those portions of our opinion that were not impacted by *Universal Health*: Part III.C, which reversed the district court's dismissal of Badr from the implied certification claim; Part IV, which concluded that the Government stated a false records claims under 31 U.S.C. § 3729(a)(1)(B); and Part V, which concluded that Badr failed to

10

state a claim with regard to Triple Canopy's actions at other bases in Iraq. We remand the case to the district court for further proceedings consistent with our opinion.

*AFFIRMED IN PART,*
*REVERSED IN PART,*
*AND REMANDED*